**PEAK DRILLING CO.**

v.

**HALLIBURTON OIL WELL CEMENT-
ING CO. et al.**

No. 4862.

United States Court of Appeals
Tenth Circuit.

Aug. 16, 1954.

Gus Rinehart, Oklahoma City, Okl.,
for appellant.

Duke Duvall, Oklahoma City, Okl., and
Robert E. Rice, Duncan, Okl. (Robert

O. Brown, Duncan, Okl., was with them on the brief), for appellees.

Before BRATTON and MURRAH, Circuit Judges, and SAVAGE, District Judge.

MURRAH, Circuit Judge.

The appellant, Peak Drilling Company, appeals from a judgment of the District Court dismissing a third-party complaint, in an action by an employee of appellee, Halliburton Oil Well Cementing Company, against Peak, for personal injuries sustained in the course of his employment with Halliburton, as a result of the alleged negligence of Peak. Calvery v. Peak Drilling Co., D. C., 118 F.Supp. 335.

In his complaint, the employee, Calvery, alleged in substance that while Peak was drilling an oil well as an independent contractor for the Sinclair Oil and Gas Company, his employer, Halliburton, contracted with Sinclair to make a hook-wall test on the drilling well; that while engaged in the performance of the test, in the course of his employment with Halliburton, an employee of Peak negligently started the rotary table on the drilling rig, causing an attachment to the drill pipe to swing around, striking and injuring the plaintiff. In its answer, Peak admitted the jurisdictional facts, but denied negligence, and pleaded contributory negligence. It was then alleged that in any event, Halliburton had charge of the operations at the time of the plaintiff's injury and all persons working on the well were the special servants of Halliburton and under the direct supervision of its employee plaintiff, and any negligence of any of the workmen was therefore chargeable to Halliburton and to plaintiff's fellow servants.

In its third-party complaint, Peak pleaded its drilling contract with Sinclair and the contract between Halliburton and Sinclair, whereby Halliburton was to furnish certain equipment for the performance of the testing operations, and then alleged that the accident and resulting injuries were caused by the negligence of the third-party defendant, Halliburton, in one of the following particulars: "(1) The tools, machinery and equipment furnished by third-party defendant in the operation then in progress were defective. (2) The workmen furnished by third-party defendant were careless and did not exercise that degree of skill reasonably prudent workmen would have under the circumstances. (3) The workmen and employees of third-party defendant used improper methods of operating their equipment." The prayer was for a judgment over against Halliburton for all sums adjudged against Peak in favor of the first-party plaintiff, Calvery.

It was expressly agreed that Calvery's injuries arose out of and in the course of his employment with Halliburton, and that he was covered by the Workmen's Compensation Law of Oklahoma, 85 O.S.1951 § 1 et seq., where the accident occurred. It is conceded that third-party practice under Rule 14(a), F.R.C.P., 28 U.S.C.A. neither creates nor enlarges upon the substantive rights of the parties, but merely provides the procedure for the assertion of those rights under applicable Oklahoma law; and that Oklahoma law gives no right of contribution or indemnity to a joint tort-feasor, but leaves the parties as it finds them. Peak rests its asserted right to indemnity squarely upon the so-called "lenient exception" to the general rule, recognized in Oklahoma, which gives the right of indemnity to one constructively or vicariously liable to a party whose injuries were caused by the primary or active negligence of another, as where, for example, under the doctrine of respondeat superior, a master is liable for the negligence of his servants, or a municipality is liable to a member of the public for failure to discover and correct a nuisance created by the negligence of an abutting property owner. See United States v. Acord, 10 Cir., 209 F.2d 709, and Oklahoma cases cited there. See also Union Stock Yards Co. of Omaha v. Chicago B. & Q. Railroad Co., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453; 27 Am.

Jur. Indemnity §§ 18–19, p. 467; 42 C.J.S., Indemnity § 27(b), page 606; Restatement on Restitution §§ 90–102; Indemnity Between Negligent Tort-feasors: A proposed rationale, 37 Iowa Law Review, Summer 1952, p. 517. Indemnity thus turns on the kind and character, not the comparative degree of negligence which caused the injury. And, it necessarily arises out of an independent legal relationship, under which the indemnitor owes a duty either in contract or tort to the indemnitee apart from the joint duty they owe to the injured party.

The trial court recognized the exception to the general rule, but upon a careful study of the pleadings was unable to find any valid basis for distinguishing the kind and character of negligence charged against Peak and Halliburton. It took the view that the allegations of negligence in both the first and third-party complaints implied primary and active negligence. It construed the first-party complaint to assert "a claim against Peak by virtue of the negligent manner in which one of Peak's servants operated certain machinery", and the third-party complaint as alleging that "Halliburton was guilty of negligence in furnishing defective 'tools, machinery and equipment' for the job in question and in supplying workmen who discharged their duties negligently and not in conformity with accepted methods of operation." From this, the court reasoned that Peak could not assert that it was being held constructively liable for negligent acts committed by Halliburton's servants, or that its negligence varied in character and gravity from the alleged negligence of Halliburton. Calvery v. Peak Drilling Co., supra, 118 F.Supp. at page 338.

■■ We agree with the trial court that both the original and the third-party complaint allege a cause of active and positive negligence against each defendant. Calvery alleged that Peak was negligent in the operation of the machinery, Peak alleged that Halliburton was negligent in furnishing tools or inefficient workmen, either one or all of which

could have caused the injury. In this posture of the case, there can be no actionable difference in the quality of negligence. Peak alleged a contract implied by law as grounds for indemnity, but the pleadings do not allege an independent legal relationship from which a contract can be implied. Indeed, they do not create any legal relationship from which a duty arises from Halliburton to Peak. Both Peak and Halliburton were independent contractors to Sinclair, there was no contractual relationship between them. Of course each owed the other the duty to exercise ordinary care, but there is no allegation of a breach of that duty and there is therefore no legal basis for indemnity.

■ But the trial court was not content to rest its decision on a construction of the pleadings. It took the view that in any event, the third-party complaint was barred by the exclusionary provisions of the Oklahoma Workmen's Compensation Law, which pertinently provides that the liability prescribed in the Act shall be "exclusive and in place of all other liability of the employer and any of his employees, at common law or otherwise, for such injury, loss of services or death, to the employee * * *." 85 O.S. 1951 § 12. While the question involves a construction of an Oklahoma statute on which the Oklahoma courts have not spoken, we deem it not inappropriate to express our agreement with the trial court's reasoning and conclusions.

The appellant relies upon American District Telegraph Co. v. Kittleson, 8 Cir., 179 F.2d 946, involving tantalizingly similar facts. In that case, the appellate court, reversing the trial court, sustained the third-party complaint on the grounds that it alleged an actionable difference between the quality of negligence on which the respective liabilities of the indemnitor and indemnitee rested. The right to indemnity was sustained squarely upon the allegation that the third-party defendant had failed in its duty to furnish a safe place for the third-party plaintiff's employees to work in the performance of a maintenance contract be-

tween them. Nor could the court find anything in the exclusionary provisions of the Iowa Workmen's Compensation Act, I.C.A. § 851 et seq., indicating a legislative purpose to bar the common law action asserted in the third-party complaint.

Appellant also places strong reliance upon Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N.E.2d 567, where the New York court sustained the right of indemnity for the breach of an alleged independent duty or obligation owed to the plaintiff by the actively negligent defendant. And, the right to indemnity was sustained in the face of the exclusionary provisions of the New York Workmen's Compensation Law, McK. Consol.Laws, c. 67. The right to indemnity was also upheld in the face of comparable provisions of the Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., based upon the breach of an independent contractual duty owing to the indemnitee by the indemnitor to perform work with due care in Rich v. United States, 2 Cir., 177 F.2d 688. To the same effect see Burris v. American Chicle Co., 2 Cir., 120 F.2d 218. And, other workmen's compensation acts have been held not to bar the right of indemnity founded upon a special legal relationship other than arising out of participation in a joint wrong to an injured party. Baugh v. Rogers, 24 Cal. 2d 200, 148 P.2d 633, 152 A.L.R. 1043; Tabor v. Stewart, 277 App.Div. 1075, 100 N.Y.S.2d 697; Gorham v. Arons, Sup.N.Y.County, 1947, 76 N.Y.S.2d 850. These cases deny the exclusive effect of the workmen's compensation and other comparable acts to an employer whose active and primary negligence was the real and efficient cause of injuries to his employee when the right of indemnity is asserted by one who has become constructively or vicariously liable to the injured employee.

But the exclusionary provisions of workmen's and longshoremen's acts have been consistently construed to preclude the right of indemnity to one negligently liable to an employee of an employer in the absence of some independent contractual relationship creating a duty on the part of the employer to indemnify. American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322; LoBue v. United States, 2 Cir., 188 F.2d 800; Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784; Hunsucker v. High Point Bending & Chair Co., 237 N.C. 559, 75 S.E.2d 768. In Slattery v. Marra Bros., 186 F.2d 134, 139, the Second Circuit could find no "sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of a compensation act * * *." In American Mutual Liability Ins. Co. v. Matthews, supra, the same court said, "To impose a non-contractual duty of contribution on the employer is pro tanto to deprive him of the immunity which the statute grants him in exchange for his absolute, though limited, liability to secure compensation to his employees." [2 Cir., 182 F.2d 324.] The Third Circuit agreed in Crawford v. Pope & Talbot, Inc., supra. And, after a careful analysis of all of the adjudicated cases, the North Carolina Supreme Court in Hunsucker v. High Point Bending & Chair Co., supra, took the positive view that the exclusionary provisions of the North Carolina Compensation Act, G.S. § 97–1 et seq., similar to the Oklahoma Act, abrogated the common law right of a passively negligent third party to demand indemnity from an actively negligent employer. The court reasoned that since the liability of the employer was limited to the compensation payable by him on account of the jury, to impose additional liability upon the employer in the guise of a contribution or indemnity is to "lose the substance of law by grasping at its shadow." [75 S.E.2d 777.] This reasoning is in consonance with our construction of the state compensation law in Underwood v. United States, 10 Cir., 207 F.2d 862.

As we have seen, there is no contractual or legal relationship between Peak and Halliburton giving rise to an enforceable duty on the part of Halliburton to Peak, as in American District Telegraph Co. v. Kittleson, supra; Burris v. American Chicle Co., supra; Westchester Lighting Co. v. Westchester County Small Estates Corp., supra; Rich v. United States, supra; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902, 20 A.L.R.2d 695, and cases which sustain the right of indemnity against the employer.

The judgment is affirmed.