NATIONAL UNION FIRE INSURANCE COMPANY and Mid–States Aircraft Engines, Inc., Plaintiffs,

v.

A.A.R. WESTERN SKYWAYS, INC., and Teledyne, Inc., d/b/a Teledyne Continental Motors, Defendants.

No. 71858.

Supreme Court of Oklahoma.

Dec. 12, 1989.

Michael Atkinson, Best, Sharp, Thomas, Glass & Atkinson, Tulsa, David McDonald, McDonald & McDonald, Miami, Fla., Edward A. McConwell, Keith R. Lyman, Edward A. McConwell Law Firm, Overland Park, Kan., for plaintiffs.

Rocklin D. Lyons, Looney, Nichols, Johnson & Hayes, Oklahoma City, for defendants.

LAVENDER, Justice:

The United States District Court for the Northern District of Oklahoma certified the following questions pursuant to the Uniform Certification of Question of Law Act, 20 O.S.1981, §§ 1601 et seq.:

(1) whether indemnity is available to one who, without fault on his own part, has paid damages occasioned by the primary negligence of another, even where there exists no contractual or vicarious liability;

(2) whether the rule of proportionate and several liability applies in a contribution action under the Oklahoma Contribution Statute at 12 O.S.1981, § 832;

(3) whether liability is to be apportioned under the Oklahoma Contribution Statute at 12 O.S.1981, § 832 utilizing a pure comparative negligence method;

(4) whether attorney fees incurred both in the underlying actions and the contribution action are recoverable in a contribution claim under the Oklahoma contribution Statute at 12 O.S.1981, § 832;

(5) whether, in actions pursuant to the Oklahoma Contribution Statute at 12 O.S.1981, § 832, settlement agreements not releasing the liability of other tortfeasors bar the settlor from obtaining contribution from the unreleased tortfeasors to the extent of amounts paid in such settlement, in effect "reducing the claim" of the settling tort-feasors for contribution against such non-settling tort-feasors by the amounts paid in such settlements?

We hold that: (a) indemnity is not available to one who, has paid damages caused by the primary negligence of another *unless* there exists between them an enforceable contract or vicarious liability; (b) the rule of proportionate and several liability adopted by this court does not apply to a contribution action, however, under Oklahoma's contribution statute, 12 O.S.1981, § 832, each tortfeasor's share of contribution will be apportioned according to his degree of fault; (c) this court will not address the issue of whether pure comparative negligence applies to a contribution action since our answer in question two holds that a tortfeasor will pay proportionately his share of contribution; (d) Oklahoma's contribution statute 12 O.S.1981, § 832 makes no provision for recovery of attorney fees therefore, in a contribution action there is no right for recovery of attorney fees; (e) Oklahoma's contribution statute 12 O.S.1981, § 832 clearly states that settlement agreements not releasing the liability of other tortfeasors will bar the settlor from obtaining *any* contribution

from the unreleased tortfeasors in a contribution action.

## FACTS

On July 20, 1983 in Cleveland, Ohio, an Aero Commander aircraft crashed killing all on board and causing property damage to surrounding buildings. All of the cases were eventually settled although the cause of the accident has never been judicially determined. One theory puts the blame on a failed exhaust piece in the right engine of the plane that went undetected during previous repairs. Before the accident, the plane had been serviced by Carair, not a party to this action and two F.A.A. repair stations, Plaintiff Mid–States Aircraft Engines, Inc. (Mid–States) and Defendant A.A.R. Western Skyways, Inc. (A.A.R.).

It is Mid–States' contention that it was not negligent in performing the inspection of the aircraft. Mid–States claims it was only required to make a visual inspection of the exhaust system. However, Mid–States further contends that prior to the inspection, A.A.R. had overhauled the right engine of the aircraft and in doing so had failed to detect the defective exhaust piece. Mid–States alleges that in settling the cases it was actually fulfilling the responsibility of A.A.R. for its negligent acts and not those of Mid–States.

Therefore, Mid–States and its insurer National Union Fire Insurance Co. (National Union), also a Plaintiff in this action, seek to recover monies paid in the previous settlements by right of indemnification. In the alternative, if in the contribution suit, Mid–States is found liable in part for the airplane crash, then as a co-tortfeasor Mid–States seeks contribution from A.A.R.

Defendant A.A.R. has not contributed in any of the prior settlements. A.A.R. further denies that it was negligent or that it is liable for contribution.

1. *Travelers Ins. Co.*, 770 P.2d at 555 n. 16.

2. *Stamford Energy Co., v. Corporation Com'n.,* 764 P.2d 880 (Okla.1988); *Central National*

## I.

WHETHER INDEMNITY IS AVAILABLE TO ONE WHO, WITHOUT FAULT ON HIS OWN PART, HAS PAID DAMAGES OCCASIONED BY THE PRIMARY NEGLIGENCE OF ANOTHER, EVEN WHERE THERE EXISTS NO CONTRACTUAL OR VICARIOUS LIABILITY?

■ The general rule of indemnity is that one without fault, who is forced to pay on behalf of another, is entitled to indemnification. Mid–States is arguing that it was not negligent in servicing the aircraft and that the settlements were actually made on behalf of A.A.R. Since Mid–States would then be a "party without fault forced to pay on behalf of another," Mid–States should be entitled to indemnification from A.A.R.

In *Travelers Insurance Company v. L. V. French Truck Service, Inc.,* 770 P.2d 551 (Okla.1988), this court, on reviewing the state of the law of indemnity in Oklahoma, said that:

'Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person.' 15 O.S.1981 § 421. *It provides no remedy against a third party. Oppenheim v. National Surety Co.,* 105 Okl. 223, 231 P. 1076, 1077 [1925]. Noncontractual or equitable indemnity is similar to common-law contribution; one who is only constructively or vicariously obligated to pay damages because of another's tortious conduct may recover the sum paid from the tortfeasor. *Braden v. Hendricks,* Okl., 695 P.2d 1343, 1349 [1985] and *Porter v. Norton–Stuart Pontiac-Cadillac of Enid,* Okl., 405 P.2d 109, 113 [1965].[1]

Therefore, the right of indemnity may arise out of an express (contractual) or implied (vicarious) liability. However, Oklahoma case law has always premised this right of indemnity on the understanding that a legal relationship exists between the parties.[2]

*Bank v. McDaniel,* 734 P.2d 1314 (Okla.App. 1986), *reh. denied,* Jan. 27, 1987, *cert. denied,* March 24, 1987; *Braden v. Hendricks,* 695 P.2d 1343 (Okla.1985); *Rucker Co. v. M & P Drilling*

Beginning with *Peak Drilling Co. v. Halliburton Oil Well Cementing Co. et al.*, 215 F.2d 368 (10th Cir.1954), cited with approval in *Harter Concrete Products, Inc. v. Harris*, 592 P.2d 526 (Okla.1979), the court held that indemnity ... "necessarily arises out of an independent legal relationship, under which the indemnitor owes a duty either in contract or tort to the indemnitee apart from the joint duty they owe to the injured party.[3] Moreover, the pivotal Oklahoma case on the law of indemnity was *Porter v. Norton–Stuart Pontiac–Cadillac*, 405 P.2d 109 (Okla.1965), and was decided within the context of the rule of respondeat superior.[4] Clearly then, there must exist a legal relationship arising out of *either* contractual or vicarious liability on which to base the remedy.

In reaching this conclusion, we are mindful of Oklahoma's Contribution Statute, 12 O.S.1981, § 832 preserving the right of indemnity. Section 832(F) reads:

> This act does not impair any right of indemnity under existing law. When one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation."

This statute however, did not create a right of indemnity where none had previously existed.

Finally, we cite with approval a sister state opinion that expressly states the law of indemnity as we perceive it. The language is from a case decided much earlier. The Pennsylvania court finds the principle still viable. We agree.

> In the case of *concurrent or joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.[5]

QUESTION II: WHETHER THE RULE OF PROPORTIONATE AND SEVERAL LIABILITY APPLIES IN A CONTRIBUTION ACTION UNDER THE OKLAHOMA CONTRIBUTION STATUTE AT 12 O.S.1981, § 832?

The rule of proportionate and several liability was adopted by this court for use in comparative negligence cases when there was a negligent plaintiff. Because it seemed fairer to allow a negligent plaintiff to recover only the tortfeasor's proportionate share, we abrogated joint and several liability in comparative negligence cases. It is Plaintiffs' contention that in the suit for contribution, if they are held at all liable for the crash of the plane, then, they are in effect a "negligent plaintiff" and therefore, proportionate and several liability should be used in determining their share of contribution.

Mid–States is making this argument because Oklahoma's contribution statute states that in a contribution action a tortfeasor is entitled to recover what he has paid over his "pro rata" share. Traditionally, pro rata has meant that each tortfeasor's share would be *equal regardless of their degree of fault.* Since Mid–States is contending it is less negligent or not at all negligent as to A.A.R., it would be to Mid–States' advantage to have a proportionate, rather than a pro rata determina-

Co., 653 P.2d 1239 (Okla.1982); *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.*, 621 P.2d 1155 (Okla.1980); *Porter v. Norton–Stuart Pontiac–Cadillac*, 405 P.2d 109 (Okla.1965); *State Ins. Fund v. Taron*, 333 P.2d 508 (Okla. 1958); *Cain v. Quannah Light & Ice Co.*, 131 Okla. 25, 267 P. 641 (1928); *see also Peak Drilling Co. v. Halliburton Oil Well. Cementing Co.*, 215 F.2d 368 (10th Cir.1954); *United States v. Acord*, 209 F.2d 709 (10th Cir.1954); *Calvery v.*

*Peak Drilling Co.*, 118 F.Supp. 335 (D.C.Okla. 1954).

3. *Peak Drilling Co.*, 215 F.2d at 370.

4. *Porter*, 405 P.2d at 114.

5. *Sirianni v. Nugent Bros., Inc.*, 509 Pa. 564, 506 A.2d 868, 871 (1986) (quoting from *Builders Supply Co. v. McCabe*, 366 Pa. 322, 328, 77 A.2d 368, 371 (1951) (emphasis in original).

tion of liability. This court does find the use of the term pro rata in the contribution statute to be ambiguous. We however, do not hold with Plaintiff's argument for using the comparative negligence rule of proportionate and several liability in a contribution action.

■ In two cases, *Boyles v. Oklahoma Natural Gas Co.*, 619 P.2d 613 (Okla.1980) and *Berry v. Empire Indemnity Insurance Co.*, 634 P.2d 718 (Okla.1981), the court made clear that the repudiation of joint and several liability expressed in *Laubach v. Morgan*, 588 P.2d 1071 (Okla.1978), only applied in comparative negligence cases, and was inapplicable to "tort litigation in which the injured party is not a negligent co-actor." [6] Within Oklahoma then, in such a case, joint and several liability with the right at common law of the plaintiff to recover all of his damages from any tortfeasor regardless of the degree of negligence that party contributed to the plaintiff's damages, continues to be the law.

However, this still does not answer the question of whether contribution among tortfeasors will be apportioned on a pro rata or proportionate basis. The confusion results from the fact that the Legislature did not adopt a definitive definition of the term pro rata. Section 12 O.S.1981, § 832(B) reads:

The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tort-feasor is compelled to make contribution beyond his own pro rata share of the entire liability.

Oklahoma's contribution statute was taken from the Uniform Contribution Act. There were two Uniform Acts written however, one in 1939 and another in 1955.[7] The Oklahoma Legislature did not adopt the full text of either Act. The '39 version used the tortfeasor's degree of fault when determining a pro rata share.[8] However, the '55 Act specifically says not to base liability on degree of fault.[9] Since Oklahoma's statute tracks neither, the result is an obvious ambiguity within our statute.[10]

Clearly, it is this court's function to interpret statutory language when necessary. We have held that "a statute is open to construction ... where the language used is ambiguous and thus requires interpretation.[11]

We note a 10th circuit case, *Jay D. Jones v. Wilson Industries, Inc.*, 804 F.2d 1133 (10th Cir.1986), in which the circuit court was interpreting section 832(H) of the Oklahoma Contribution Among Tortfeasors Act, however, mindful of the intent of the original Uniform Act from which it came.

6. *Berry*, 634 P.2d at 719; *see also Boyles*, 619 P.2d at 616.

7. Uniform Contribution Among Tortfeasors Act, §§ 1–2, 12 U.L.A. 57 (1939) and Uniform Contribution Among Tortfeasors Act, §§ 1–2, 12 U.L.A. 63 (1955).

8. Uniform Contribution Among Tortfeasors Act, § 2(4), 12 U.L.A. 57 (1939). "When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors *shall be considered* in determining their pro rata shares." (emphasis added).

9. Uniform Contribution Among Tortfeasors Act, § 2, 12 U.L.A. 87 (1955). "In determining the pro rata shares of tortfeasors in the entire liability (a) their relative degrees of fault *shall not be considered;* (b) if equity requires the collective liability of some as a group shall constitute a single share; and (c) principles of equity applicable to contribution generally shall apply." (emphasis added).

10. *See* McNichols, William J., *Judicial Elimination of Joint and Several Liability Because of Comparative Negligence—A Puzzling Choice*, 32 Okla.L.Rev. 1, 13–14 (1979). Roberts, David K., *Contribution Among Joint Tortfeasors–Oklahoma Style*, 50 O.B.J. 2193 (1979) [hereinafter Roberts]; *see also* McNichols, William J., *Complexities of Oklahoma's Proportionate Several Liability Doctrine of Comparative Negligence–Is Products Liability Next?* 35 Okla.L.Rev. 195 (1982).

11. *American–First Title & Trust Co. v. First Federal Savings & Loan Assoc.*, 415 P.2d 930, 939 (Okla.1965), *reh. denied*, Dec. 14, 1965, application for leave to file second petition for *reh. denied*, June 21, 1966 (quoting 50 Am.Jur.Statutes, § 225).

The court stated, "the construction adopted should advance rather than inhibit the purposes of the Uniform Act."[12] "The Act itself provides for uniformity in interpretation."[13] Finally, "[t]he purpose of the Uniform Act is to provide proportionate allocation of the burden among multiple tortfeasors."[14]

This is persuasive argument, yet, there is a problem with the analysis. It is true that the primary purpose of either Act was to overcome the harshness of the common law rule against contribution among tortfeasors.[15] However, as between the '39 Act and the '55 Act, there is *no uniform interpretation* of the term pro rata. Indeed, the language of the '55 Act indicates proportionate allocation based on degree of fault was not intended. Since the Oklahoma Legislature adopted neither the language of the '39 Act providing for a relative fault determination, nor the language of the '55 Act, disallowing proportionate determination, the question now becomes, uniformity as to which Act?

In the final analysis, it is this court's responsibility to determine exactly what the Legislature intended in adopting this statute, ever mindful that ours is an interpretative function not a legislative one. At common law contribution was not even allowed. The rationale being that as between two guilty parties, the law would aid neither. However, the Oklahoma Legislature decided that justice was better served by allowing for contribution among tortfeasors and hence, adopted the contribution statute.

A case cited in the *Jones* decision, *Davis v. Davis*, 708 P.2d 1102 (Okla.1985) stated the proposition that:

Statutes that abrogate the common law are to be liberally construed—but only within the parameters of the legislative objective. Liberal construction is not a device for extending the ambit of an enactment beyond its intended scope. Rather, the goal of that construction is to achieve interpretation which harmonizes and coincides with the lawmakers' objective.[16]

■ Therefore, in liberally construing this statute according to legislative intent, it seems only logical that the lawmaking body expected contribution to be apportioned according to each tortfeasor's degree of fault. To have one tortfeasor 1% at fault and another 99% at fault and yet, make them split equally their liability in a contribution action seems as harsh and irrational as not having contribution at all. We find that a more equitable result is the equation of liability with fault. Surely, the Legislature would intend no less.

Therefore, in order to give effect to this statute, we hold that a tortfeasor's pro rata share will be interpreted to mean proportionate, as based on one's degree of fault. This leaves unaltered the traditional common law doctrine of joint and several liability among tortfeasors as it exists under Oklahoma law.

QUESTION III: WHETHER LIABILITY IS TO BE APPORTIONED UNDER THE OKLAHOMA CONTRIBUTION STATUTE AT 12 O.S.1981, § 832 UTILIZING A PURE COMPARATIVE NEGLIGENCE METHOD?

We have adopted proportionate contribution among tortfeasors in a contribution action in answering question two. For that reason there is no need to discuss whether pure comparative negligence would apply to a contribution action.

QUESTION IV: WHETHER ATTORNEY FEES INCURRED BOTH IN THE UNDERLYING ACTIONS AND THE CONTRIBUTION ACTION ARE RECOVERED IN THE CONTRIBUTION CLAIM UNDER THE OKLAHOMA CONTRIBUTION STATUTE OF 12 O.S. 1981, § 832?

12. *Jones,* 804 F.2d at 1140.

13. *Id.* at 1139 n. 14.

14. *Id.* at 1138.

15. Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 59 (1955) (Commissioners' Prefa-

tory Note); Uniform Contribution Among Tortfeasors Act, 12 U.S.A. 60 (1939) (Commissioners' Prefatory Note).

16. *Davis,* 708 P.2d at 1111.

■ Attorney's fees are not recoverable in any action, unless they are specifically provided for by contract or by statute.[17] Oklahoma's contribution statute 12 O.S. 1981, § 832, makes no provision for the recovery of attorney's fees. Neither is there any provision for recovery of fees in the '39 or '55 Uniform Contribution Among Tortfeasors Act from which Oklahoma's statute was taken.

Plaintiff argues that, by analogy, equity supports a recovery of attorney fees since we have held that right exists in an indemnification action. For this, plaintiff cites *United General Ins. v. Crane Carrier Co.*, 695 P.2d 1334 (Okla.1984), where this Court held a third party plaintiff entitled to recover attorney fees under the general rules of indemnity. We do not however, find this analogy to indemnity persuasive.

First, "[i]t is axiomatic that equity is without power to change rights established by law, *or to create a right where none exists.*"[18] Since in the present case, there is neither statute nor contract allowing for recovery, there is no right of attorney fees. Moreover, in *United General Ins.*, plaintiff was denied recovery of attorney fees in litigating the third party action since there had not been an express contract between the parties for recovery.[19] Clearly, this case would not support a theory for recovery of attorney's fees in the contribution action itself. Therefore, it is the opinion of this court that no basis exists for recovery of attorney's fees in a contribution action.

QUESTION V: WHETHER IN ACTIONS PURSUANT TO THE OKLAHOMA CONTRIBUTION STATUTE AT 12 O.S.1981, § 832, SETTLEMENT AGREEMENTS NOT RELEASING THE LIABILITY OF OTHER TORTFEASORS BAR THE SETTLOR FROM OBTAINING CONTRIBUTION FROM THE UNRELEASED TORTFEASORS TO THE EXTENT OF AMOUNTS PAID IN SUCH SETTLEMENT, IN EFFECT "REDUCING THE CLAIM" OF THE SETTLING TORTFEASOR FOR CONTRIBUTION AGAINST SUCH NONSETTLING TORTFEASORS BY THE AMOUNTS PAID IN SUCH SETTLEMENTS?

■ The court finds plaintiff's position with regard to the fifth question without merit in that 12 O.S.1981, § 832(D) is not ambiguous. As stated in *Brigance v. Velvet Dove Restaurant*, 756 P.2d 1232 (Okla. 1988), where a statute "is clear and unambiguous, ... rules of statutory construction are not applied where the Legislature plainly expresses its intent.[20] Section 832(D) states, "A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable."

The commissioners' comment to the Uniform Act from which this section in Oklahoma's statute was taken says that "the policy of the Act is to encourage rather than discourage settlements."[21] If a tortfeasor discharges the entire obligation he should be allowed contribution from those whose liability he has discharged.[22] This is only fair. However, the implication is clear that where the entire liability has not been discharged, no right of contribution exists.[23] Moreover, this section of Oklahoma's statute was taken from the '55 Act which was taken directly from the '39 Act, so there is no ambiguity between the two

---

**17.** *Joy v. Giglio*, 254 P.2d 351, 354 (Okla.1953).

**18.** *National Trailer Convoy v. Oklahoma Turnpike Auth.*, 434 P.2d 238, 241 (Okla.1967), *reh. denied*, Oct. 3, 1967.

**19.** *United General Ins.*, 695 P.2d at 1339.

**20.** *Brigance*, 756 P.2d at 1235 (quoting *Duesterhaus v. City of Edmond*, 634 P.2d 720 (Okla. 1981)).

**21.** Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 65 (1955) (Commissioners' Comment).

**22.** *Id.*

**23.** Roberts, *supra* note 10 at 2198.

original Acts on this point.[24] We find therefore, no justification to interpret further the language of 12 O.S.1981, § 832(D).

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, SIMMS, DOOLIN and SUMMERS, JJ., concur.

KAUGER, J., concurs in result.

ALMA WILSON, J., dissents from part II.

KAUGER, Justice, concurring in result:

I agree with the majority's conclusion that insofar as joint and several liability is concerned, the common law right of the plaintiff to recover all damages from any tort-feasor regardless of the degree of negligence that party contributed to the plaintiff's damages, "continues to be the law." I also agree that under 12 O.S.1981 § 832(B)[1] a tort-feasor who pays an injured party an amount representing more than his proportionate share of damages may recover the excess payment from a joint tortfeasor in a contribution action. Finally, I agree that in a contribution action brought pursuant to 12 O.S.1981 § 832(B) joint tortfeasors are liable for their proportionate share of the damages based upon their degree of fault.

However, the majority opinion holds that "... (t)raditionally, pro rata has meant that each tortfeasor's share would be equal regardless of their degree of fault ..." It is this presumption together with the implication that the terms "pro rata" and "proportionate" mean different things which concerns me.

Section 832(B) provides that joint tortfeasors may be compelled to contribute their *pro rata share* of the entire liability. Because the Legislature did not define "pro rata" in conjunction with § 832, and because Oklahoma did not adopt either of the Uniform Acts,[2] the term should be given its plain and ordinary meaning.[3] *Webster's* defines pro rata as being "according to the share, interest, or liability of each."[4] According to *Prosser and Keeton on Torts*, a tortfeasor's "pro rata share" is normally arrived at by dividing the total damages by the number of tortfeasors. Nevertheless, the treatise also recognizes that in some jurisdictions distribution of liability is in proportion to the comparative fault of the defendants.[5] Many courts have determined that the terms "pro rata" and "proportionate" are synonymous[6]—the relation of one portion to another.[7] Oklahoma is one of these. In *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947, 954 (Okla.1987), we found

**24.** Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 65 (1955) (Commissioners' Comments).

**1.** Title 12 O.S.1981 § 832(B) provides:
"The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tort-feasor is compelled to make contribution beyond his own pro rata share of the entire liability."

**2.** Uniform Contribution Among Tortfeasors Act § 2, 12 U.L.A. 57 (1939) and Uniform Contribution Among Tortfeasors Act § 2, 12 U.L.A. 87 (1955).

**3.** *Matter of Income Tax Protest of Ashland Exploration, Inc.*, 751 P.2d 1070, 1073 (Okla.1988); *Hess v. Excise Bd.*, 698 P.2d 930, 932 (Okla. 1985); *State v. Sims*, 690 P.2d 1052, 1054 (Okla. 1984).

**4.** W. Neilson, *Webster's New International Dictionary of the English Language*, p. 1986 (2nd Ed. G. & C. Merriam Co., 1952).

**5.** W. Keeton, *Prosser & Keeton on Torts*, pp. 340–41, § 50 (5th Ed. West Publishing Co. 1984).

**6.** *Hager v. McDonald*, 65 F. 200, 202 (W.D.Mo. 1895); *Commercial Union Assurance Co. v. Western Farm Bureau Ins. Co.*, 93 N.M. 507, 601 P.2d 1203–04 (1979); *McKnight v. Pardon*, 313 Ky. 154, 230 S.W.2d 631, 632 (1950); *United Sec. Life Ins. Co. v. Dupree*, 41 Ala.App. 601, 146 So.2d 91, 96 (1962); *Home Ins. Co. v. Continental Ins. Co.*, 180 N.Y. 389, 73 N.E. 65, 66 (1905). See also, *Central Nat'l Ins. Co. v. Devonshire Coverage Corp.*, 426 F.Supp. 7, 11 (D.Neb.1976), *modified*, 565 F.2d 490 (1977) (The definition used by the district court was retained by the appellate court.). But see, *Health Care Equalization Comm. v. Iowa Medical Soc'y*, 501 F.Supp. 970, 978 (S.D.Iowa 1980), *aff'd*, 851 F.2d 1020 (1988).

**7.** *United Sec. Life Ins. Co. v. Dupree*, see note 6, supra.

that a pro rata clause in an insurance policy limited coverage to a *proportionate share* in relation to all coverage available for the covered risk.

ALMA WILSON, Justice, dissenting in part II:

We are called upon to give meaning to the term "pro rata" within the context of Oklahoma's contribution statute, 12 O.S. 1981 § 832. Our construction of this troublesome word will determine how contribution between multiple tortfeasors should be allocated.

Reference to various dictionaries and other persuasive authorities indicates that pro rata is synonymous with the term proportionate.[1] Proportionate is commonly understood to mean a method of division according to one's degree of interest or liability. Applying this definition each tortfeasor is liable in contribution for only his degree of fault. The proportionate method of dividing liability in contribution is coined as comparative contribution. Yet, within the context of the law of contribution the term pro rata has traditionally taken on a different meaning. Traditionally, pro rata means a division of liability in equal shares, that is, the allocation of liability in contribution cases is arrived at by dividing the damages by the *number of tortfeasors* without regard to their respective degrees of fault.[2] Furthermore the term contribution as traditionally used refers to distribution in equal shares.[3] Exhaustive research unveils the fact that the terms "pro rata" and "proportionate" as used within the context of the law of contribution are not synonymous. In fact, the two terms are used to apply different methods of calculation rendering different results.

To complicate matters, some jurisdictions adhere to the traditional method of dividing liability in equal shares. A modern trend is toward comparative contribution. Ironically the 1939 version of the Uniform Contribution Among Tortfeasors Act (hereinafter the "Act")[4] provided for comparative contribution as an *optional,* not mandatory, legislation. Whereas the 1955 version of the Act specifically provides that the tortfeasor's relative degrees of fault shall not be considered when determining the distribution of common liability.[5] One stops to query why the Act was changed from the modern trend to the traditional method. The reasoning behind the modern trend is to attain fairness. Advocates of comparative contribution maintain that it is more inherently fair for tortfeasors to be liable only for their relative degrees of fault.[6] Yet, the traditional method may well be more inherently fair as the drafters of the 1955 Act ably demonstrate in the comments to § 2 of the Act. For example, applying comparative contribution, is it fair for the tortfeasor who has settled the whole to bear the share of the insolvent tortfeasor?[7] Of course not. Nor is it fair to require two tortfeasors to equally split their liability when one is 1% at fault and the other 99% at fault. Both methods of allocating common liability seek fairness, the guiding light of equity.

The Restatement (Second) of Torts 2d (1979) completely avoids the use of the terms pro rata and proportionate. Instead the Restatement § 886A(2) states that "[n]o tortfeasor can be required to make contribution beyond his own equitable

1. See Black's Law Dictionary 1098 (5th ed. 1979); Webster's Third New International Dictionary, 1820 (1961); Words and Phrases and cases cited therein.

2. 1 S. Speiser, C. Krause, A. Gans, The American Law of Torts §§ 3:23, 3:24 (1985), 53 ALR3d 184.

3. Prosser and Keeton on Torts §§ 50, 51 (5th ed. 1984).

4. Uniform Contribution Among Tortfeasors Act, § 2(4) 12 U.L.A. 57 (1939).

5. Uniform Contribution Among Tortfeasors Act, § 2 12 U.L.A. 87 (1955).

6. See footnotes 2 and 3.

7. The inequities of comparative negligence come to light only in prejudgment situations if the share of the insolvent tortfeasor is not distributed among the remaining solvent tortfeasors.

share of liability." In the comments to the Restatement, the drafters state at page 338 that "[c]ontribution is a remedy that developed in equity" and that "when there are three tortfeasors and one of them is clearly insolvent or is beyond the jurisdiction, the amount of contribution fairly allowable between the other two may reasonably be affected and the court may be expected to do what is fair and equitable under the circumstances." *Id.* at 339. The drafters of the Restatement go on to note in the comments that there are two methods of assessing equitable shares (pro rata and comparative contribution). Under both methods, situations may call for some variation. Specifically the drafters state "[i]f the tortfeasor's equitable share turns out to be uncollectible it should be spread proportionately among the other parties at fault." *Id.* at 340–41.

The wisdom and fairness of both methods of allocation of common liability in contribution are sound. However, it is not the role of the judiciary to substitute its wisdom for that of the legislature. In spite of the apparent ambiguity of the use of the term pro rata, the diversity among jurisdictions and the wisdom and fairness claimed by advocates of both methods, I am compelled to construe Oklahoma's contribution statute's use of the term pro rata to mean the traditional and equal distribution of liability among tortfeasors regardless of degree of fault. I so .conclude because it would be difficult to fathom that our legislature was not enlightened as to the controversy between the use of the two terms and their respective differing methods of calculation and results. All authority researched has noted the controversy and I am therefore compelled to determine that our legislature was cognizant of the difference and chose the term pro rata. I cannot agree with the majority that pro rata and proportionate are snyonymous. Nor can I agree that our legislature meant proportionate when it legislated pro rata. I therefore dissent to Part II.