2011 OK CIV APP 69

**GUIDEONE AMERICA INSURANCE COMPANY, INC., Plaintiff/Appellant,**

and

**Guideone Mutual Insurance Company, Guideone Specialty Mutual Insurance Company, Guideone Elite Insurance Company, and Guideone Services, LLC, Plaintiffs,**

v.

**SHORE INSURANCE AGENCY, INC., Defendant/Appellee,**

and

**Nancy Shore, Defendant.**

No. 108,138.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 10, 2011.

Rehearing Denied March 25, 2011.

Certiorari Denied May 23, 2011.

Michael Woodson, Nevin R. Kirkland, Edmonds Cole Law Firm, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Joe E. White, Jr., Charles C. Weddle III, White & Weddle, PC, and Mort G. Welch, Welch & Smith, PC, Oklahoma City, Oklahoma, and Bruce A. McKenna, Brandon J. Burris, Glendening McKenna Prescott & Robertson, Tulsa, Oklahoma, for Defendant/Appellee.

JANE P. WISEMAN, Judge.

¶1 GuideOne America Insurance Company, Inc., (GuideOne) appeals from the trial court's order granting summary judgment in favor of Shore Insurance Agency, Inc. (Agency).[1] This appeal is governed by Supreme Court Rule 1.36, 12 O.S. Supp.2010, ch. 15, app. 1 and proceeds without appellate briefing. Having reviewed the record and pertinent law, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On May 26, 2003, GuideOne's insured, Christi Roberts, was involved in a motor vehicle accident. According to Roberts, she notified her agent, Nancy Shore, on or about June 24, 2003, stating she had been injured in an automobile accident. Nancy Shore testified she did not notify GuideOne after this conversation because Roberts asked her not to turn in a claim "because she was afraid that her insurance could be canceled if she turned in another claim because of prior claim history." [2] Nancy Shore also testified that when she initially called GuideOne to check Roberts' coverage, "the company guy told [her] that [Roberts'] UM [uninsured/underinsured coverage] wouldn't kick in until the other girl that [Roberts] was involved in the accident with in the car, until her liability

insurance had paid everything." Nancy Shore told Roberts that her UM coverage did not apply until after the tortfeasor's policy limits first were exhausted.

¶3 Carol Curtis, an adjuster employed by GuideOne, testified that she first became involved in September 2003 when Roberts' claim was received, set up, and assigned to her for handling. Curtis had a conversation with Roberts on September 18, 2003, which was recorded and transcribed. In this conversation Roberts tells Curtis that her agent Nancy Shore told her that GuideOne would not pay until "Farmers Union was finished and if there wasn't enough money to pay the bills, then my insurance would pick up." Despite the fact Curtis testified that she knew this advice to be wrong, Curtis could not explain why she failed to correct Nancy Shore's statement:

Q. And what I'm wondering is, if you knew what you say you knew that you knew in this time in September of '03, that that's not the way it's supposed to work, why did you not straighten her out? Why did you not tell her that's just not true; let me tell you and explain to you how it really works?

A. I don't know.

Q. Well, wouldn't you agree with me you should have?

A. Looking back now, yes.

In the fall of 2003, the tortfeasor's insurer tendered its coverage to Roberts.

¶4 Roberts filed a federal lawsuit against GuideOne in February 2004 for breach of contract and bad faith in its handling of her claim. GuideOne tendered its policy limits to Roberts on December 8, 2004, and later settled the federal lawsuit with Roberts. Nancy Shore testified that she attended the settlement conference on behalf of Agency and provided settlement authority. However,

1. According to the motion for summary judgment transcript of the hearing on January 22, 2010, counsel for GuideOne Plaintiffs stated that all other GuideOne Plaintiffs had dismissed their claims against Agency except GuideOne America Insurance Company, Inc. Also according to the transcript, the parties agreed that all GuideOne Plaintiffs had previously dismissed their claims against Nancy Shore, individually. It appears that the only remaining claims then were GuideOne America's claims against Agency and Nancy Shore's individual counterclaims against GuideOne Plaintiffs.

2. In her "Response and Objection to Defendants' Motion for Summary Judgment" filed in the federal case discussed *infra*, Roberts denies saying this to Shore. Roberts' deposition testimony, however, is not included in the appellate record.

Shore testified she did not feel she had done anything wrong because she only repeated to Roberts what the unknown representative from GuideOne told her about the UM coverage. GuideOne ultimately settled the federal lawsuit with Roberts but retained its rights of indemnity and/or contribution against Agency. GuideOne then filed the present action against Agency seeking indemnification and/or contribution for all or a portion of the monies paid in its settlement with Roberts.

¶ 5 Agency filed a motion for summary judgment contending GuideOne cannot succeed on any indemnity or contribution theories. In response, GuideOne argued disputed material facts existed precluding summary judgment and that summary judgment was not warranted as a matter of law.

¶ 6 The trial court granted Agency's motion for summary judgment finding no substantial controversy as to any material fact existed and that Agency should be granted judgment as a matter of law on GuideOne's claims.

¶ 7 GuideOne appeals.[3]

## STANDARD OF REVIEW

¶ 8 We review a trial court's grant of summary judgment *de novo. Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears an "affirmative duty ... to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant." *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106. Further, the evidentiary materials and the inferences

to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Hargrave v. Canadian Valley Elec. Coop., Inc.*, 1990 OK 43, ¶ 14, 792 P.2d 50, 55.

## ANALYSIS

*I. Indemnity.*

### Contractual Indemnity

■ ¶ 9 Agency entered into a written Independent Agent Contract with GuideOne in January 1999 which governed their relationship as independent contractor and insurance companies.[4] GuideOne does not dispute that anything that occurred regarding GuideOne and Agency's contractual relationship between January 1999 and July 2005 would be governed by the January 1999 contract. Although GuideOne admits the 1999 contract does not contain any indemnity provision in its favor, it argues this is not dispositive because the independent agent contract "excepts situations in which the agent's (i.e. [Agency's]) errors and omissions lead[ ] to claims." The indemnity provision in the 1999 contract states:

1. *The Company shall indemnify and hold the Agent harmless against any claim or liability, including attorney's fees arising as a result of Company act or omission, except to the extent that the Agent has caused the error.* The Company shall also indemnify and hold the Agent harmless based on the actual failure of the Company to comply with the requirements of the Fair Credit Reporting Act in the procurement or use of consumer reports as defined by the Act.

2. The Agent shall give prompt written notification to the Company of any claim against [A]gent and the Compa-

---

3. The trial court's order dated January 26, 2010, granting Agency's motion for summary judgment did not dispose of all pending issues in the lawsuit and, according to GuideOne's petition in error, was "without an express determination that there was no just reason for delay or an express direction for filing of final judgment, decree, or final order." After the trial on the remaining issues in Nancy Shore's counterclaims resulting in a final order issued on February 24, 2010, GuideOne filed two concurrent appeals:

(1) Case Number 108,137 (the appeal of the jury verdict and judgment rendered on February 24, 2010), and (2) Case Number 108,138 (the accelerated appeal of the trial court's order sustaining Agency's motion for summary judgment filed on January 26, 2010).

4. R. at Tab 3, Agency's Motion for Summary Judgment, Ex. 7.

ny shall be entitled to participate in such action or to assume the defense of such action with counsel satisfactory to the Company. If the Company assumes the defense of any such action, it shall not be liable to the Agent for any legal or other expenses subsequently incurred by the Agent in connection with such action. If Agent fails to promptly notify Company of any action or fails to cooperate fully with Company in defense of such action, Company is relieved of its indemnification obligations to Agent.

(Emphasis added.)

¶ 10 This provision clearly states that GuideOne has agreed to indemnify and hold Agency harmless against liability for damage arising out of any act or omission committed by GuideOne, unless the Agent caused the error. There is no reverse provision by which Agency agreed to indemnify GuideOne. This is GuideOne's independent agent contract, and GuideOne did not include language imposing a duty on Agency to indemnify it under circumstances such as the ones in question here. As a result, under a plain reading of the contract, GuideOne is not entitled to recover from Agency based on a contractual indemnity theory.

### Implied Indemnity

■ ¶ 11 We next address whether GuideOne has a non-contractual or implied right of indemnification. "The general rule of indemnity is that one without fault, who is forced to pay on behalf of another, is entitled to indemnification." *National Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc.*, 1989 OK 157, ¶ 7, 784 P.2d 52, 54. " 'Noncontractual or equitable indemnity is similar to common-law contribution; one who is only constructively or vicariously obligated to pay damages because of another's tortious conduct may recover the sum paid from the tortfeasor.' " *Id.* at ¶ 8, 784 P.2d at 54 (quoting *Travelers Ins. Co. v. L.V. French Truck Serv., Inc.*, 1988 OK 76, n. 16, 770 P.2d 551). "Noncontractual indemnity is sometimes referred to as 'implied indemnity' and 'may *arise out* of a *contractual* or special relationship between parties and from equitable con-

siderations.' " *Noble Steel, Inc. v. Williams Bros. Concrete Const. Co.*, 2002 OK CIV APP 66, ¶ 12, 49 P.3d 766, 770 (quoting *Central Nat'l Bank of Poteau v. McDaniel*, 1986 OK CIV APP 34, ¶ 9, 734 P.2d 1314, 1316).

■ ¶ 12 No right of indemnity exists between joint tortfeasors, however. *Caterpillar Inc. v. Trinity Indus., Inc.*, 2006 OK CIV APP 48, ¶ 17, 134 P.3d 881, 886. If concurrent or joint tortfeasors with no legal relationship to each other but owing the same duty to an injured party are involved in the same injury-causing occurrence, no right of indemnity exists in favor of one joint tortfeasor against the other. *Thomas v. E–Z Mart Stores, Inc.*, 2004 OK 82, ¶ 22, 102 P.3d 133, 140. "The right exists when one who is only constructively liable to the injured party and is in no manner responsible for the harm is compelled to pay damages for the tortious act of another." *Caterpillar*, 2006 OK CIV APP 48 at ¶ 17, 134 P.3d at 886.

¶ 13 We must review the appellate record to determine if there is any evidence from which one could conclude that GuideOne was fault-free with regard to the liability for which it seeks indemnification. If there is, then summary judgment on GuideOne's implied indemnity claim is not appropriate. On the other hand, if the evidence establishes without contradiction that GuideOne was not fault-free, then summary judgment is appropriate.

¶ 14 GuideOne seeks indemnification from Agency for "their acts or omissions upon which the [federal] Litigation was premised." GuideOne asserts that it was sued by Christi Roberts who "specifically alleged it was the error of Nancy Shore which started the chain of events leading to alleged breach of contract and bad faith conduct of [GuideOne]." Agency, on the other hand, argues that GuideOne cannot recover on the basis of implied indemnity because (1) it has admitted it is at fault, and (2) its expert testified that GuideOne "acted in bad faith in connection with Roberts' uninsured motorist claim."

¶ 15 Donald Samuel Waters, Jr., GuideOne's counsel, testified in his deposition that Nancy Shore did nothing to delay GuideOne's payment of benefits to Roberts from

the time the claim was assigned in September 2003 to December 2004. Waters also admitted that when Carol Curtis spoke with Roberts in September 2003, she should have corrected Shore's erroneous statement regarding first exhausting the tortfeasor's coverage.[5]

¶ 16 GuideOne's expert, Ron Crain, testified that GuideOne committed bad faith:

Q. Okay. Is it your opinion that GuideOne did commit bad faith in the underlying litigation?

A. Yes.

Q. Okay. Aside from anything that the Shore [A]gency did?

A. I think there was some involvement by both parties that contributed to the bad-faith situation, yes. I think there was some delay from GuideOne once they started handling the claim.

Crain later describes GuideOne's bad-faith conduct in handling the claim:

A. The bad-faith conduct was once the medical-the six or seven weeks after the medical authorization was received and not acted on was my main concern with GuideOne's handling of the claim.

Q. That occurred, though, in September, October, November, December of '03, did it not?

A. Right. They got the medical authorization, I believe, in late September of '03 and didn't do anything until early November, and it would be from that, like September 25th of '03 date until November 10th of '03.

Crain further testified that Carol Curtis had an obligation to correct Shore's statement to Roberts and to advise Roberts of the current law:

Q. And if Carol Curtis is given information by Christi Roberts indicating that Nancy Shore has misstated Oklahoma's law, does Carol Curtis have an obligation to correct that statement and advise Ms. Roberts of what the law really is?

A. Yes. I would think so.

Q. And if she doesn't do that, then that's a breach of the Oklahoma Unfair Claim Settlement Practices Act, isn't it?

A. I would think so under that scenario, yes.

¶ 17 Agency identifies the following three undisputed material facts in support of its argument that GuideOne is not entitled to implied indemnity:

1. [GuideOne] has admitted that its conduct in handling the Roberts['] claim was "dilatory." *Exhibit 1*, Depo. Of Sam Waters, p. 48.

2. [GuideOne's] expert, Ron Crain, has testified that [GuideOne's] handling of the claim rose to the level of bad faith. *Exhibit 2*, Depo. of R. Crain, p. 17.

3. [GuideOne's] expert has testified that [GuideOne's] bad faith began in September of 2003, when [GuideOne] first opened Roberts' UM claim file, and continued while the Bad Faith Case was pending. *Id.* p. 65–66.

Although GuideOne disputes the first fact as being immaterial, it admits the second and third facts. We find the undisputed evidence establishes that Roberts' injuries or damages in her federal lawsuit were caused by GuideOne's own acts or omissions in handling Roberts' claim, conduct separate and apart from any alleged acts or omissions of Agency. It is not disputed that GuideOne was at fault, and no recovery under an implied indemnity theory will therefore lie in GuideOne's favor.

II. *Contribution.*

¶ 18 We next determine whether GuideOne can recover pursuant to a right of contribution. Although Roberts sued GuideOne in the federal lawsuit for breach of contract and bad faith, she brought no action against Agency. Agency's joinder as a party defendant in the previous lawsuit is not a prerequisite to GuideOne's claim for contribution against Agency to recover that portion of the settlement amount GuideOne paid to

---

**5.** *See Burch v. Allstate Insurance Co.,* 1998 OK 129, ¶ 2, 977 P.2d 1057, 1058 (stating that UM coverage is primary, meaning the UM carrier "is liable for the entire amount of its insured's loss from the first dollar up to the UM policy limits without regard to the presence of any other insurance").

Roberts in excess of its pro rata share. Contribution allows a plaintiff's loss to be distributed between or among joint tortfeasors pro rata, whether or not plaintiff sued all the tortfeasors. *Barringer v. Baptist Healthcare of Oklahoma*, 2001 OK 29, ¶ 7, 22 P.3d 695, 698. Pursuant to subsection B of the Uniform Contribution Among Tortfeasors Act,[6] "[t]he right of contribution exists only in favor of a tort-feasor who has paid more than their pro rata share of the common liability, and the total recovery is limited to the amount paid by the tort-feasor in excess of their pro rata share."

¶ 19 At the hearing on the motion for summary judgment, GuideOne's counsel argued that Agency's delay in contacting GuideOne about Roberts' claim was negligent and contributed to Roberts' damages:

> Alternatively, contribution applies when you have joint tortfeasors. It's undisputed that the claim of breach of duty of good faith and fair dealing is a tort under Oklahoma law. So is negligence, the claim we are presenting against Nancy Shore in this case claiming you made an error, you breached a duty, and it caused us damage, and that is all we're seeking to recover in this case would be damages associated after the fact-finder determines it with the conduct of Nancy Shore.

■ ¶ 20 "However, an alleged tortfeasor defending against a contribution claim is not without defenses. It may assert, among any other available defenses, that it was not a tortfeasor (*i.e.*, that it had no liability to plaintiff)...." *Barringer*, 2001 OK 29 at ¶ 9, 22 P.3d at 698. That is the position asserted by Agency—it denied it was a tortfeasor or liable to Roberts under any claim. During the summary judgment hearing, Agency's counsel asserted:

> Nancy Shore and the Shore Agency don't owe a duty to [Roberts] that [Roberts] could have ever sued them on. That's the point. The point is in order for [GuideOne] to win contribution, he has to

[demonstrate] that his client was clearly owed a duty that was breached.

¶ 21 In determining the existence of a right to recover for contribution, the critical question is whether Agency is a tortfeasor who contributed to or caused the same injury/damages sustained by Roberts. 12 O.S. 2001 § 832(A) (stating that "[w]hen two or more persons become jointly or severally liable in tort for the same injury to [a] person ... there is a right of contribution among them even though judgment has not been recovered against all or any of them except as provided in this section").

¶ 22 Agency argues GuideOne "has not paid a legal obligation owed by Shore." Agency asserts that because the duty of good faith and fair dealing an insurer owes to its insured is non-delegable, it cannot be held liable for bad faith as a matter of law. Agency argues that because Agency cannot be liable under this theory, any duty owed to Roberts could only arise in negligence, if at all.

¶ 23 GuideOne's counsel seems to assert that Agency's complained-of conduct sounds in negligence, not in bad faith.[7] To the extent GuideOne is arguing Agency's conduct toward Roberts violated the duty of good faith and fair dealing, we agree with Agency that there can be no right to contribution based on Agency's purported violation of this duty.

■ ¶ 24 "A 'special relationship' exists between an insurer and its insured stemming from the quasi-public nature of insurance, the unequal bargaining power between the insurer and insured, and the potential for an insurer to unscrupulously exert that power at a time when the insured is particularly vulnerable." *Wathor v. Mutual Assurance Adm'rs, Inc.*, 2004 OK 2, ¶ 6, 87 P.3d 559, 561–62. "The special relationship creates a nondelegable duty of good faith and fair dealing on the part of the insurer." *Id.* at ¶ 6, 87 P.3d at 562. This duty is nondelegable so that insurers cannot escape liability by delegating tasks to third parties. *Barnes v.*

---

6. 12 O.S.2001 § 832(B).

7. It is clear that GuideOne's contribution claim cannot apply to damages paid to Roberts to satisfy her breach of contract claim in the federal suit.

*Oklahoma Farm Bureau Mut. Ins. Co.*, 2000 OK 55, n. 5, 11 P.3d 162 (holding that an insurer cannot "avoid liability for breach of the duty of good faith and fair dealing by delegating its responsibility to an independent contractor"); *see also Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, ¶ 17, 653 P.2d 907, 912–13 (rejecting an attempt to hold an agent liable for breach of the duty of good faith and fair dealing who was not a party to the contract between insurer and insured). Given the facts of this case, we conclude Agency cannot be held liable for a violation of the duty of good faith and fair dealing.

 ¶ 25 We next address whether Agency violated any other duty owed to Roberts. Agency contends nothing in the 1999 contract gives it the authority to adjust claims, but rather, Nancy Shore was only a soliciting agent as defined by 36 O.S. Supp.2009 § 110 with no authority to bind GuideOne. Agency points out that GuideOne's expert, Crain, was not critical of Nancy Shore for being unaware of Oklahoma law and stated that GuideOne's adjuster, Carol Curtis, should have corrected Shore's previous misstatement of UM law. Agency thus concludes that because no contractual or "at-law duty [was] owed to Roberts, there can be no negligence and no debt assumed by [GuideOne]."

¶ 26 Although GuideOne admits Nancy Shore had no contractual duty or authority to adjust claims, it asserts that she did have a contractual duty to "assist policyholders and cooperate with adjustors in reporting and handling claims and render such other services to policyholders as may properly and reasonably be provided by an Agent." GuideOne argues Agency owed a duty to Roberts to timely report the claim.[8]

¶ 27 We conclude that GuideOne has no right of contribution against Agency. Agency has no liability to Roberts on any breach of contract or bad faith theory; only GuideOne can be liable to Roberts on these theories. Joint tortfeasor contribution does not lie for joint breach of contract liability,[9] and Agency was not a party to the contract of insurance on which Roberts based her federal claims. Nor can Agency be held liable for bad faith as discussed above. The record does not disclose the terms of the confidential settlement. Whether settlement funds were paid for breach of contract or bad faith or both cannot be determined,[10] but it must be for either or both.

¶ 28 We reject GuideOne's argument that a claim of simple negligence under these circumstances gives rise to a right to contribution. Clearly, GuideOne could not be liable to its insured for bad faith based only on negligent conduct in its handling of an insured's claim. In *Badillo v. Mid Century Insurance Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080, 1094, the Supreme Court stated:

> To the extent *American Fidelity & Casualty Co. v. L.C. Jones Trucking Co.*, 321 P.2d [685, 687], may have implied that a simple negligence standard was approved or adopted as to the level of culpability necessary to be shown for liability to attach to an insurer for breach of the duty of good faith and fair dealing in relation to the handling of a third-party claim against the insured, i.e., the situation involved here, that case is expressly overruled, but only to such extent. In our view, under *Christian* and later cases, the minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer.

(Footnote omitted.)

¶ 29 To hold that Agency, on the basis of alleged negligence only, could be subject to

---

8. During the summary judgment hearing, GuideOne's counsel stated: "[I]t is part of an errors and omissions claim against the Shore Insurance Agency that there was a duty [to] promptly report claims according to-at a minimum, [Roberts] that was not done. It delayed the claim, and in the underlying case, GuideOne was held responsible for that."

9. If damages were paid to Roberts on this claim, as opposed to a tort claim, GuideOne has no

right to contribution from Agency for any portion of these damages.

10. For this reason, although bad faith is an intentional tort, it would require speculation to exclude a right to contribution based on 12 O.S. 2001 § 832(C): "There is no right to contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury...."

liability for a portion of Roberts' breach of contract/bad faith damages paid by GuideOne is to hold Agency to a higher standard than that required by Oklahoma law to impose liability on GuideOne.[11] On the record before us, we cannot conclude that Agency and GuideOne have become or could become "jointly or severally liable in tort for the same injury" to Roberts, thus giving rise to a right of contribution against Agency in favor of GuideOne pursuant to 12 O.S.2001 § 832(A).

¶ 30 GuideOne has presented no evidence to sustain the allegation that Agency breached any duty owed to Roberts or that Agency is a tortfeasor contributing to the same injuries or damages of the insured. *Weeks v. Wedgewood Vill., Inc.,* 1976 OK 72, ¶ 14, 554 P.2d 780, 785 (upholding the grant of summary judgment in favor of the defendant because "[n]o evidence was presented to sustain the allegation [defendant] breached any duty"). GuideOne is not entitled to contribution from Agency, and the trial court properly granted summary judgment.

### CONCLUSION

¶ 31 We have reviewed the record *de novo* and conclude the trial court correctly granted summary judgment in favor of Agency.

¶ 32 **AFFIRMED.**

BARNES, P.J., and FISCHER, J., concur.

---

11. We do not address the question of whether it is permissible in applying the theory of contribution to allow allocation of some portion of damages to a party who has no direct or active liability, but only constructive or vicarious liability.