2002 OK CIV APP 66

**NOBLE STEEL, INC.,**
**Plaintiff/Appellant,**

v.

**WILLIAMS BROTHERS CONCRETE CONSTRUCTION COMPANY, a/k/a Williams Bros. Concrete Contractor, Inc., Defendant/Appellee.**

**No. 95,706.**

Court of Civil Appeals of Oklahoma,
Division No. 4.

March 19, 2002.

Rehearing Denied May 13, 2002.

Kelly F. Monaghan, John M. Folks, Holloway & Monaghan, Tulsa, OK, for Plaintiff/Appellant.

Gerald G. Stamper, John E. Harper, Jr., Nichols, Wolfe, Stamper, Nally, Fallis & Robertson, Inc., Tulsa, OK, for Defendant/Appellee.

Opinion By JOE C. TAYLOR, Presiding Judge.

¶ 1 In this action for indemnity, Plaintiff, Noble Steel, Inc., appeals a judgment entered in favor of Defendant, Williams Brothers Concrete Contractors, Inc. The issue on appeal is whether Plaintiff is entitled to either contractual or implied indemnity from Defendant for penalties and costs incurred due to violations of regulations of the Occupational Safety and Health Administration (OSHA). Having reviewed the record and applicable law, we find that Noble Steel is entitled to non-contractual indemnity on one OSHA violation, and reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Williams Brothers was the primary contractor on a construction project at the Waste Water Treatment Plant in Clinton, Oklahoma. Williams Brothers solicited bids from subcontractors for the furnishing of labor to unload and install fabricated rebar at the Clinton project. Noble Steel submitted a bid offering to work based upon specified unit prices. Noble Steel's bid included certain conditions concerning scheduling, labor, payment, and other general items; a list of items that would be included in its price, such as hand tools, wire, supervision, torches, etc.; and a list of items that were excluded from the price, such as drinking water, toilets, certain equipment, etc. Of importance to this litigation is Noble Steel's exclusion of "[s]afety caps on exposed vertical reinforcing steel." Although Williams Brothers accepted Noble Steel's bid, their agreement was never memorialized in a separate written agreement.

¶ 3 During the time that Noble Steel was installing the rebar on the project, an OSHA representative visited the construction site and cited both Williams Brothers and Noble Steel with OSHA violations, including a citation for failing to cover the vertical rebar during construction, as required by 29 C.F.R. § 1926.701(b). Additionally, Noble Steel received a citation for failing to provide stairways or ladders for access into and out of the area where its employees were working, as required by 29 C.F.R. § 1926.1051(a).[1] The total penalty for Noble Steel's violations was $2,250.

¶ 4 Williams Brothers negotiated a settlement and paid the penalties on the citations. Noble Steel, on the other hand, unsuccessful-

1. Williams Brothers also received citations for failing to provide proper ground fault protection, as required by 29 C.F.R. § 1926.404(b)(1)(i), and for failing to provide adequate stairs, as required by 29 C.F.R. § 1926.1052(a)(2). These citations are not relevant to this appeal.

ly disputed the citations administratively in the OSHA Review Commission and judicially through the Tenth Circuit Court of Appeals. During this ill-fated protest process, Noble Steel incurred costs and attorney fees in excess of $28,000. Noble Steel then filed this action seeking indemnification from Williams Brothers for the penalties, costs, and attorney fees.

¶5 The case proceeded to a bifurcated non-jury trial. After the liability portion of the trial, the trial court granted judgment to Williams Brothers based on its finding that Williams Brothers "did not breach any obligation, contractual or otherwise, owed to [Noble Steel]." Noble Steel appealed the judgment, arguing the trial court erred in refusing Noble Steel's request for findings of fact and conclusions of law. The Court of Civil Appeals agreed and remanded the case to the trial court with directions to enter findings of fact and conclusions of law. *Noble Steel, Inc. v. Williams Bros. Concrete Constr. Co.*, Appeal No. 91,548, July 27, 1999.

¶6 On remand, after receiving proposed findings of fact and conclusions of law from both Williams Brothers and Noble Steel, the trial court filed its findings of fact and conclusions of law. The trial court concluded that (1) Williams Brothers had no obligation to provide plastic protective caps for the exposed vertical rebar; (2) Williams Brothers had no obligation to Noble Steel to provide ladders for Noble Steel's employees beyond those which were available; (3) Noble Steel had the option to quit the job if it believed Williams Brothers had breached its agreement to provide safety caps, ladders, or other equipment; (4) Williams Brothers had no contractual or other obligation to indemnify Noble Steel against penalties for violations of OSHA regulations or to pay any attorney fees incurred by Noble Steel in contesting OSHA citations; (5) Williams Brothers breached no obligation, contractual or otherwise, owed to Noble Steel; (6) Noble Steel was not entitled to damages from Williams Brothers; (7) neither party was entitled to attorney fees in this action; and (8) Williams Brothers was entitled to judgment exonerating it from all liability to Noble Steel.

¶7 Noble Steel again appeals the judgment entered in favor of Williams Brothers. Noble Steel implicitly makes two arguments regarding indemnity: (1) Williams Brothers contracted to indemnify Noble Steel for the OSHA violations; and (2) the contractual relationship between Williams Brothers and Noble Steel gives rise to an implied right of indemnification from Williams Brothers.

## CONTRACTUAL INDEMNIFICATION

¶8 The two OSHA regulations which Noble Steel violated are found among OSHA regulations regarding safety and health for construction projects, 29 C.F.R. Part 1926. Under these regulations, contractors *and* subcontractors are prohibited from requiring "any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety, as determined under construction safety and health standards promulgated by the Secretary [of Labor] by regulation." 29 C.F.R. § 1926.10. Furthermore, although a prime contractor and its subcontractors "may make their own arrangements with respect to obligations which might be more appropriately treated on a jobsite basis rather than individually," the subcontractors are relieved "from the actual, *but not any legal, responsibility.*" 29 C.F.R. § 1926.16(a) (emphasis added). The regulations further provide as follows:

(c) To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility.

(d) Where joint responsibility exists, both the prime contractor and his subcontractor or subcontractors, regardless of

tier, shall be considered subject to the enforcement provisions of the Act.

29 C.F.R. § 1926.16(c), (d).

¶ 9 It is clear from these regulations that, regardless of whether the agreement between Williams Brothers and Noble Steel required Williams Brothers to provide ladders for Noble Steels' employees and caps for the rebar, Noble Steel was subject to the regulations and was liable for any OSHA violations arising out of a failure to provide those items. Thus, any alleged indemnification agreement between Williams Brothers and Noble Steel would be an agreement to indemnify Noble Steel against its own liability.

 ¶ 10 Agreements to indemnify a party against its own negligence or liability are strictly construed. *See Transpower Constructors v. Grand River Dam Auth.,* 905 F.2d 1413, 1420 (10th Cir.1990) (applying Oklahoma law). "To be enforceable, the agreement must meet the following three conditions: (1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." *Id.* (citing *Fretwell v. Protection Alarm Co.,* 1988 OK 84, ¶ 12, 764 P.2d 149, 152). It is unnecessary to address the second and third requirements, because Noble Steel cannot meet the first requirement.

¶ 11 The only written document evidencing the parties' intent is Noble Steel's bid.[2] Looking at the clear language of the bid regarding coverage for the rebar, the bid merely states that Noble Steel will not provide "[s]afety caps on exposed vertical reinforcing steel." Although Williams Brothers took responsibility for covering the rebar with plywood, the bid itself does not expressly obligate Williams Brothers to do so. Nor does the bid mention or in any way require Williams Brothers to provide ladders for Noble Steel's employees' use. More importantly, the bid makes no reference to indemnification by Williams Broth-

ers for failure to cover the rebar or to provide ladders. More specifically, the bid makes no reference to indemnification against penalties and expenses associated with OSHA violations. Noble Steel presented no other evidence to show that Williams Brothers expressly agreed to indemnify Noble Steel for anything. Thus, Noble Steel failed to show that the parties "expressed their intent to exculpate in unequivocally clear language." Consequently, the trial court correctly determined that Williams Brothers had no contractual obligation to indemnify Noble Steel against penalties for violations of OSHA regulations.

### IMPLIED INDEMNITY

 ¶ 12 Noble Steel also argues that the relationship of contractor and subcontractor gives rise to a right of implied indemnification from Williams Brothers. "The general rule of indemnity is that one without fault, who is forced to pay on behalf of another, is entitled to indemnification." *Nat'l Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.,* 1989 OK 157, ¶ 7, 784 P.2d 52, 54. "Noncontractual or equitable indemnity is similar to common-law contribution; one who is only constructively or vicariously obligated to pay damages because of another's tortious conduct may recover the sum paid from the tortfeasor." *Id.* at ¶ 8, 784 P.2d at 54. Noncontractual indemnity is sometimes referred to as "implied indemnity" and "may *arise out of a contractual* or special relationship between parties and from equitable considerations." *Central Nat'l Bank of Poteau v. McDaniel,* 1986 OK CIV APP 34, ¶ 9, 734 P.2d 1314, 1316 (emphasis added). Noncontractual or implied indemnity "rests upon fault of another which has been imputed or constructively fastened upon him who seeks indemnity." *Id.*

A. *Indemnification for failure to adequately cover the rebar.*

 ¶ 13 It is undisputed that Williams Brothers and Noble Steel had a contractual relationship, whereby Noble Steel agreed to deliver and install rebar for a project on

---

2. At trial, Williams Brothers also submitted a copy of a contract between it and Noble Steel. However, the agreement is not signed by Noble Steel.

which Williams Brothers was the general contractor. Moreover, although the contract does not unequivocally require Williams Brothers to cover the rebar in order to protect the workers, the evidence presented at trial shows that either Williams Brothers voluntarily undertook this duty or industry standards imposed this duty on Williams Brothers. Bobby Williams, the president, safety director, and an owner of Williams Brothers, testified that Williams Brothers assumed the responsibility of providing the materials to protect the rebar. More specifically, Williams testified that it was a customary practice for the general contractor to supply the material. Finis Riggs, Noble Steel's employee who prepared the bid, testified that industry standards require the general contractor to cover the rebar. Thus, it is clear from the evidence presented at trial that Williams Brothers undertook the duty of covering the rebar. Its failure to properly cover the rebar so that it met with OSHA standards exposed Noble Steel to liability for something that was Williams Brothers' responsibility.

¶ 14 The Tenth Circuit Court of Appeals addressed a similar situation in *Safway Rental & Sales Co. v. Albina Engine & Machine Works, Inc.,* 343 F.2d 129 (10th Cir.1965). Albina Engine, which owned scaffold equipment, entered into a joint venture with Safway Rental, whereby Safway Rental would lease Albina Engine's scaffolds to third parties in Oklahoma. Although Safway Rental agreed to maintain, repair, and service the equipment, there was no express agreement by Safway Rental to indemnify Albina Engine for any loss which might occur as a result of Safway Rental's failure to maintain

and service the equipment. A workman who was injured when one of the scaffolds fell sued both Safway Rental and Albina Engine. A jury returned a verdict against both parties. The court then held in favor of Albina Engine on its cross-claim for indemnification against Safway Rental.

¶ 15 The court of appeals first determined that "[t]he record amply support[ed] the trial court's findings that by the express agreement to service the equipment Safway was obligated to do so in a workmanlike manner so that it was safe for use for its intended purpose." *Id.* at 131. According to the court, "Safway failed to perform its contractual duty, and the injuries to the user of the equipment, and the resulting involvement of Albina were certainly foreseeable consequences." *Id.* (footnote omitted). The court concluded that Albina was entitled to implied indemnity, which arises out of " 'an independent legal relationship [such as a joint venture], under which the indemnitor owes a duty either in contract or tort to the indemnitee apart from the joint duty they owe to the injured party.' " [3] *Id.* at 132 (quoting *Peak Drilling Co. v. Halliburton Oil Well Cementing Co.,* 215 F.2d 368, 370 (10th Cir.1954)).

¶ 16 Like Safway Rental, Williams Brothers, whether by contract or by industry standard, undertook the duty of providing coverage for the rebar. Implicit in this undertaking was the duty to cover the rebar in a manner that would meet safety regulations and would protect the workers. Williams Brothers' failure to adequately perform its duty resulted in OSHA fines to both Williams Brothers and Noble Steel that were "certainly foreseeable." The legal relationship between Williams Brothers and

---

**3.** Williams Brothers attempts to distinguish *Safway Rental* by emphasizing that, because of the existence of the joint venture relationship, Albina Engine was only held vicariously liable, whereas, in the instant case, Noble Steel was not merely vicariously liable. Despite this difference, we find *Safway Rental* persuasive. First, the court in *Safway Rental* noted that "[t]he legal conclusion that they were joint adventurers was of importance in the negligence action where they faced claims of a third party, but it is of less significance in this action between the two of them based primarily on contract rather than on doctrines of tort." 343 F.2d at 131. Likewise, in the instant case, this action for indemnity is

based primarily on Williams Brothers' undertaking to perform a certain function and the resulting fines for its failure to sufficiently perform that function. Furthermore, in *Safway Rental* vicarious liability was imposed on Albina Engine for Safway Rental's failure to maintain and service the scaffold in a workmanlike manner. Similarly, in the instant case, liability was imposed on Noble Steel by OSHA for Williams Brothers' failure to adequately cover the rebar, as it had undertaken to do. Thus, we find *Safway Rental* sufficiently analogous to the instant case to be persuasive authority for our decision here.

Noble Steel and the duty to properly cover the rebar require Williams Brothers to indemnify Noble Steel.[4]

### B. Indemnification for failure to provide ladders.

 ¶ 17 Noble Steel also seeks indemnification from Williams Brothers for the citation it received for failing to provide a ladder at the work site. However, the bid provided by Noble Steel makes no reference to ladders and whether it will provide them or whether they are excluded from the bid. Furthermore, the evidence as to who was to provide ladders at the job site was in stark conflict. Noble Steel presented evidence that industry standards require the general contractor to provide ladders for subcontractors. On the other hand, Williams Brothers presented evidence that, although it allows subcontractors to use its ladders that are present on the job site, it does not provide ladders for the subcontractors and industry standards do not require it to do so. The trial court was the sole judge of the credibility of the witnesses, and its finding that "Williams had no contractual or other obligation to Noble to provide for the use of Noble's employees ladders beyond those which were available" is supported by the evidence. Thus, because Williams Brothers had no duty (contractual, implied, or as-

sumed) to provide ladders for Noble Steel's employees, it cannot be held liable to indemnify Noble Steel for the OSHA citation for not providing ladders.

### CONCLUSION

¶ 18 We conclude that, although there is no contract for indemnification, Noble Steel is entitled to implied indemnification arising out of the relationship between it and Williams Brothers. However, this right of indemnification extends only to the OSHA citation for failure to provide adequate rebar covering and does not extend to the OSHA citation for failure to provide ladders at the work site. Therefore, we must remand the case for further proceedings on the issue of damages.[5]

¶ 19 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

REIF, C.J., and STUBBLEFIELD, J., concur.

---

4. We note that 29 C.F.R. § 1926.16(a) acknowledges that a prime contractor and subcontractor "may make their own arrangements with respect to obligations which might be more appropriately treated on a jobsite basis rather than individually." Thus, although Noble Steel may still may be legally liable to pay the OSHA fine, nothing in the OSHA regulations prohibits indemnification by Williams Brothers for the fine.

5. Because the trial court bifurcated the trial and heard only the issue of liability, we do not address the issue of damages. We note only that *reasonable* attorney fees are allowed to an indemnitee as a part of damages. *Booker v. Sears Roebuck & Co.*, 1989 OK 156, 785 P.2d 297.

Thus, on remand, Noble Steel will carry the burden of proving that the attorney fees (approximately $28,000) it incurred in protesting the OSHA violation regarding failure to properly cover the rebar were reasonable under the circumstances. Circumstances to consider include, but are not limited to, the nature of the violation itself; the fact that Noble Steel protested both violations, but is entitled to indemnification on only one violation; the validity of the defenses raised by Noble Steel, before both the administrative and judicial tribunals; and the soundness of the appeal to the Tenth Circuit Court of Appeals.