2011 OK 18

PLANO PETROLEUM, LLC, Appellee,

v.

GHK EXPLORATION, L.P., Appellant.

No. 108,174.

Supreme Court of Oklahoma.

March 8, 2011.

---

Sharon T. Thomas, Michael E. Smith, Ralph E. Seals, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, for Appellee.

Robert H. Gilliland, Jr., McAfee & Taft P.C., Oklahoma City, and Thomas B. Goodwin, Cheyenne, Oklahoma, for Appellant.

COLBERT, V.C.J.

¶ 1 The issue is the intent of the parties to an assignment of an interest in oil and gas. The lower courts attempted to construe the ambiguous conveyance as a matter of law and, in doing so, supplied a legal description of the interest conveyed. Thus, the lower courts speculated impermissibly as to the parties' intent which cannot be determined from the four corners of the instrument. The matter must be remanded to the trial court for extrinsic evidence of the parties' intent.

¶ 2 Plaintiff, Plano Petroleum, L.L.C. (Plano) maintains that it owns an entire oil and gas lease by virtue of a 2002 assignment made to its predecessor in interest. Defendant, GHK Exploration, L.P. (GHK) asserts that the 2002 Assignment was a "wellbore only" assignment whereby Plano acquired leasehold rights only insofar as the well it describes.

¶ 3 The "Newell" oil and gas lease was executed in 1956 and covered 320 acres in Roger Mills County. In 2002, the joint own-

ers of the lease, The Ann Eldridge Trust and Bill Weems Oil, Inc. (Eldridge and Weems), made an assignment to Clydesdale Energy, LLC, (Clydesdale) by an instrument which was filed of record in 2003. The granting clause provided:

[Assignors] do hereby sell, assign, transfer and set over unto Clydesdale Energy, LLC, ... all right, title and interest in and to that certain wellbore, all leasehold, limited in depth from the surface of the earth to the base of the Tonkawa Formation, and all surface and subsurface equipment and materials thereon and therein, more particularly described as the Claude E. Newell # 1 well. Said leases and well located in the northwest quarter of Section 23–17N–25W, Roger Mills County, Oklahoma, which wellbore, leases and associated equipment and materials so specified are hereinafter referred to as "SAID WELL."

What the parties intended by this language is the subject of this dispute.

¶ 4 In 2008, Clydesdale assigned its interest to Plano using the same language but adding an exhibit to its "Assignment and Bill of Sale" which provided a legal description of the entire Newell Lease.[1] Two months later, Eldridge and Weems assigned their interest in the Newell Lease to GHK by separate identical assignments. Those instruments provided a legal description of the entire "Newell Lease" and excepted the 2002 Assignment which they described as "wellbore only." The 2008 Assignments to GHK conveyed:

all of Assignor's rights, titles, and interest in to and under, and which might be derived from that certain Oil and Gas Lease by and between Claude F. Newell ... and J.W. Collins ... dated September 20, 1956 ... and covering the following described lands:

Section 23–17N–25W: NE/4 & E/2 NW/4 & N/2 SE/4 Insofar and only insofar as it covers rights from the surface of the earth

to 100′ below the stratigraphic equivalent of the base of the Tonkawa formation. *Less and except* only those rights thereunder pertaining to the well bore and the well bore only of the Newell # 1 well located in the E/2 NW/4 of Section 23–17N–25W, ... if any, which were assigned and conveyed by that certain Assignment between [Assignors] and Clydesdale ... as Assignee, dated November 30, 2002....

¶ 5 Plano filed this action seeking to quiet title to the entire 320 acre mineral interest comprising the Newell Lease. GHK counterclaimed contending its title should prevail. Each party assured the trial court that there was no factual dispute and that it could therefore interpret the contract as a matter of law. The trial court granted summary judgment and quieted title to the entire Newell Lease in Plano holding essentially that the 2002 Assignment left nothing for GHK to receive from Eldridge and Weems. A divided Court of Civil Appeals affirmed by unpublished opinion and the dissenting judge authored a vigorous dissent. This Court granted certiorari review.

## STANDARD OF REVIEW

¶ 6 Summary judgment is proper only "[i]f it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law." Rules for Dist. Cts., Okla. Stat. tit.12, ch. 2, app., Rule 13(e) (Supp. 2007). "Only when the evidentiary materials eliminate all *factual* disputes relative to a question of law is summary judgment appropriate on that issue." *In re Assessment of Real Prop. of Integris Realty Corp.*, 2002 OK 85, ¶ 5, 58 P.3d 200, 203. The trial court's ruling on the legal issue is reviewed de novo as a question of law. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. However, an appellate court will "reverse the grant of summary judgment if the materials submitted to the trial court indicate a substantial contro-

---

1. The legal description of the Newell Lease which was attached to the 2008 Assignment to Plano is not found in the 2002 Assignment to Clydesdale. Nevertheless, counsel for Plano orally argued to the trial court that the attach-ment to the 2008 assignment was evidence that the 2002 Assignment was not intended to convey only the wellbore and its associated lease and equipment rights.

versy exists as to any material fact." *Brady v. Criswell Funeral Home, Inc.*, 1996 OK CIV APP 1, ¶ 6, 916 P.2d 269, 270.

## ANALYSIS

 ¶ 7 The 2002 Assignment is a contract and a conveyance. When presented with a dispute concerning a conveyance, the trial court's duty is clear. "[T]he court's first priority is to ascertain the true intent of the parties, particularly that of the grantor, as gathered from the four corners of the instrument itself, considering each part and viewed in light of the circumstances attending and leading up to its execution...." *Messner v. Moorehead*, 1990 OK 17, ¶ 8, 787 P.2d 1270, 1272. "If the language and terms of a conveyance are clear and unambiguous, then the written deed, and the laws in force at the time of the deed's execution will govern the rights and obligations of the grantor and grantee." *Id.*, ¶ 9, 787 P.2d at 1273. If, however, the four corners of a conveyance demonstrate "an intrinsic uncertainty" the instrument is ambiguous. *Id.* "When the court determines that a deed is ambiguous, the court has a duty to resolve the ambiguity by considering parol and extrinsic evidence, including the parties' admissions and construction, and other circumstances." *Crockett v. McKenzie*, 1994 OK 3, ¶ 5, 867 P.2d 463, 465.

 ¶ 8 The lower courts became occupied in construing the language of the 2002 Assignment [2] and ignored the patent ambiguity present in that instrument-the parties' intent in the use of the term "all leasehold" with no accompanying legal description of the leased premises. The four corners of the 2002 Assignment support several possible intents including: (1) the instrument was a wellbore

only assignment of the Newell # 1 well, as GHK argued, and the "all leasehold" language refers to leasehold rights insofar as the Newell # 1 well and production therefrom is concerned; [3] (2) it assigned the entire 320 acre Newell Lease, as Plano argued and the lower courts held; (3) it assigned a leasehold of 80 acres in the quarter section which contains the Newell # 1 well; (4) it assigned a leasehold of 80 acres in the quarter section which contains the Newell # 1 well limited in depth to the base of the Tonkawa Formation; or (5) it assigned the entire Newell Lease limited in depth to the base of the Tonkawa Formation. Which of these possible intents, if any, was the true intent of the parties is an ambiguity which cannot be determined without extrinsic evidence. Instead of resolving the ambiguity, however, the lower courts merely chose between the two interpretations, asserted by entities who were not parties to the 2002 Assignment, without the benefit of extrinsic evidence. Under this Court's jurisprudence the trial court was duty bound to resolve the ambiguity and it was error to fail to do so.

 ¶ 9 The error was compounded by a willingness to quiet title based on an instrument which contains absolutely no legal description of the leased premises. There is a long-standing black letter rule of law that "the description of the premises conveyed must be so certain and definite as to enable the land to be identified." *Arbuckle Realty Trust v. Southern Rock Asphalt Co.*, 1941 OK 237, ¶ 8, 189 Okla. 304, 116 P.2d 912, 914. *See also Key v. Key*, 1963 OK 288, ¶ 22, 388 P.2d 505, 511. That requirement is more than a legal nicety, it is essential for recording in the county clerk's office and for establishing a chain of title.[4] In fact, a deed that

---

2. Looking only to the ambiguous language of the instrument, the Court of Civil Appeals reasoned that the 2002 Assignment granted all of the Newell Lease and reserved nothing. The real problem, of course, was that the court was forced to speculate as to the meaning of "all leasehold" because there was no legal description of that term in the 2002 Assignment.

3. The original Newell Lease made provision for royalty, ingress/egress, in-kind payment, shut-in, lease term, etc. If the term "all leasehold" was intended as shorthand for these provisions, this

dispute demonstrates sufficiently the danger in such a cryptic reference. The term is meaningless and therefore ambiguous without a description of the interest and its location.

4. "[T]he want of an adequate and precise description of the premises tends to render his title unmarketable and objectionable to future purchasers; and ... a conveyance, though admitted to record, is not notice to subsequent purchasers, unless the granted premises be therein so plainly and clearly described that a person reading the deed may locate and identify the property there-

does not sufficiently describe the property interest conveyed is void on its face. *Coley v. Williams,* 1924 OK 323, ¶ 3, 98 Okla. 143, 224 P. 345, 346.

¶ 10 Here, it is apparent from the face of the instrument that the legal description of "all leasehold" is completely absent. Nevertheless, the lower courts, in essence, reformed the conveyance by inferring that "all leasehold" somehow refers to the entire 320 acre Newell Lease although the instrument describes the Newell # 1 well only. To arrive at that result, the lower courts have journeyed beyond the four corners of the instrument to resolve the ambiguity through judicial speculation rather than requiring extrinsic evidence to determine the true intent of the parties.

¶ 11 Extrinsic evidence of the parties' intent would have prevented the lower courts from supplying a speculative conclusion as to the scope of the leasehold conveyed by the ambiguous instrument. Instead, what may have been intended as a wellbore only assignment has been construed to include the entire Newell Lease.[5] This matter must be remanded for consideration of extrinsic evidence concerning the parties' true intent.[6]

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL AP-PEALS VACATED; TRIAL COURT REVERSED; CAUSE REMANDED.

CONCUR: TAYLOR, C.J.; COLBERT, V.C.J.; KAUGER, WATT, EDMONDSON, REIF, GURICH, JJ.

CONCUR IN RESULT: WINCHESTER, COMBS, JJ.

---

from." *Coley v. Williams,* 1924 OK 323, ¶ 3, 98 Okla. 143, 224 P. 345, 346 (quoting *Maupin on Marketable Title to Real Estate* ¶ 20).

**5.** Title to the Newell lease was further clouded because the Court of Civil Appeals failed completely to address the effect of the depth limitation contained in the 2002 assignment. If that court were true to its expansive approach to the legal description, it would have extended the depth limitation to the entire Newell Lease. Under the holding of the lower courts, it was unclear who has rights to minerals in the Newell Lease which lay below the base of the Tonkawa Formation.

**6.** Appellee's motion for appeal-related attorney fees is denied.