AMERICAN ENERGY -- PERMIAN BASIN, LLC v. ETS OILFIELD SERVICES, LP



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:AMERICAN ENERGY -- PERMIAN BASIN, LLC v. ETS OILFIELD SERVICES, LP

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 AMERICAN ENERGY -- PERMIAN BASIN, LLC v. ETS OILFIELD SERVICES, LP
2018 OK CIV APP 44
Case Number: 116307
Decided: 04/23/2018
Mandate Issued: 05/24/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 44, __ P.3d __

 

AMERICAN ENERGY -- PERMIAN BASIN, LLC, Plaintiff/Appellee,
v.
ETS OILFIELD SERVICES, LP, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ROGER H. STUART, TRIAL JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

E. Edd Pritchett, Jr., David L. Kearney, DURBIN, LARIMORE & BIALICK, Oklahoma City, Oklahoma, for Plaintiff/Appellee

Drew A. Lagow, Nathaniel T. Smith, HOLDEN & MONTEJANO, Tulsa, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 This case stems from an accident that occurred at an oil well in Texas. ETS Oilfield Services, LP (ETS) appeals from the trial court's order granting summary judgment in favor of American Energy -- Permian Basin, LLC (AEP). ETS is a contractor for AEP. The dispositive issue on appeal is whether the parties intended in their written agreement for ETS to indemnify AEP from AEP's separately contracted duty to indemnify a third-party contractor sued by an ETS employee. We conclude that although the agreement between AEP and ETS contains general language susceptible to a broad interpretation, it lacks the unequivocally clear language necessary under Oklahoma law to make ETS responsible for indemnifying AEP from AEP's contractual duty to indemnify the third-party contractor. Consequently, we reverse and remand this case to the trial court with instructions to enter summary judgment in favor of ETS.

BACKGROUND

¶2 The present action stems from the filing of a lawsuit in the District Court of Regan County, Texas, by Joshua McBride -- an employee of Eagle Testing Services LP (Eagle) -- against C&J Well Services, Inc. (C&J).[1] McBride alleges in his petition in the underlying case that while working as "an employee for Eagle" he was "called to a location to do repair work on a work over rig" in Texas.[2] McBride alleges he

was sitting on the edge of the cellar, holding a rope to stabilize some equipment . . . . Suddenly, and without warning, a member of the [C&J] crew, who was working on the floor above, dropped a heavy pipe wrench, which fell, striking [McBride] on the top of his hardhat, jolting his spine[.]

¶3 Pursuant to indemnification provisions contained in an agreement between AEP and C&J, C&J tendered defense of the Texas lawsuit to AEP. It is undisputed AEP "accepted tender of the defense of [C&J] in the underlying suit" pursuant to the "separate [agreement] between AEP and [C&J] that provides the basis for AEP's duty to indemnify and defend [C&J] in the underlying [Texas] lawsuit."

¶4 A separate agreement also exists between AEP and ETS which also contains indemnification provisions. The evidentiary materials in the record on appeal indicate that ETS and C&J are both contractors for AEP. AEP's written agreements with ETS and C&J, both of which are found in the record on appeal, each contain (in addition to indemnification provisions and various other provisions) a provision stating that ETS and C&J "shall be deemed to be an independent Contractor[.]"

¶5 After accepting tender of the defense of C&J in the underlying suit, AEP, in a May 2016 letter to ETS, made "demand . . . upon [ETS] for defense and indemnification in connection with the claims and allegations made against [C&J]" in the Texas lawsuit. Upon ETS refusing to accept this demand, AEP filed the present action in the District Court of Oklahoma County seeking a declaratory judgment on its demand for indemnification -- which ETS describes as a demand for "pass-through" indemnity. The parties have filed competing motions for summary judgment.

¶6 In its order, the trial court granted summary judgment in favor of AEP. The order states that the trial court "finds that the language of the indemnity agreement between the parties is clear and explicit and requires [ETS] to indemnify [AEP] from and against any expenses, costs or liabilities it has incurred and will incur, of every kind and character without limit arising out of the lawsuit" filed by McBride against C&J.

¶7 From this order, ETS appeals.

STANDARD OF REVIEW

¶8 Summary judgment is proper only if it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law. Only when the evidentiary materials eliminate all factual disputes relative to a question of law is summary judgment appropriate on that issue. The trial court's ruling on the legal issue is reviewed de novo as a question of law. However, an appellate court will reverse the grant of summary judgment if the materials submitted to the trial court indicate a substantial controversy exists as to any material fact.

Plano Petroleum, LLC v. GHK Exploration, L.P., 2011 OK 18, ¶ 6, 250 P.3d 328 (citations omitted) (internal quotation marks omitted). "When this Court reviews the trial court's grant of summary judgment, all inferences and conclusions drawn from the evidence must be viewed in the light most favorable to the party opposing the motion." Geyer Bros. Equip. Co. v. Standard Res., L.L.C., 2006 OK CIV APP 92, ¶ 7, 140 P.3d 563 (citation omitted).

ANALYSIS

¶9 Prior to turning to the issue of "pass-through" indemnity, we first address the issue of whether the parties' agreement applies to this case at all given McBride's allegation in the underlying case that he was an employee of Eagle, not ETS, at the time of the accident. In the parties' agreement, AEP is defined as the "Company" and ETS is defined as the "Contractor." Two additional terms -- "Company Group" and "Contractor Group" -- are also defined. Unlike "Company," "Company Group" is defined very broadly in the agreement, as follows:

(a) [AEP], (b) [AEP's] successors and assigns; (c) general and limited partners of (a) and (b); (d) parents, subsidiaries and affiliates of (a), (b) and (c); (e) the working interest owners, co-lessees, co-owners, lessors, partners, and joint venturers of (a), (b), (c) and (d) and any entities for whom it is performing services or with whom it has entered into sharing agreements; (f) consultants of (a), (b), (c), (d) and (e); and (g) the agents, directors, officers and employees of (a), (b), (c), (d), (e) and (f). A partial list of those entities comprising the Company Group is set forth on Exhibit "B" attached hereto.[3]

¶10 "Contractor Group" is also defined broadly in the agreement, as follows:

(a) [ETS]; (b) any parent company of [ETS]; (c) [ETS's] heirs (if applicable), successors and assigns; (d) subsidiaries and affiliates of (a), (b) and (c); (e) all contractors and subcontractors (of every tier) of (a), (b), (c) and (d); and (f) the agents, directors, officers and employees of (a), (b), (c), (d), and (e).

Thus, there is an obvious difference in the agreement between the terms "Company" and "Company Group," and "Contractor" and "Contractor Group," and these terms are not meant to be used interchangeably in the parties' agreement.

¶11 In the indemnity provisions in the parties' agreement, "Contractor" has agreed to indemnify and hold harmless "Company Group" from and against all claims and demands "arising in connection herewith in favor of Contractor's employees, Contractor's subcontractors or their employees, or Contractor's invitees on account of bodily injury, death or damage to property." (Emphasis added.) In addition, "Company" has agreed to reciprocal terms -- i.e., "Company" has agreed to indemnify and hold harmless "Contractor Group" in a similar manner.

¶12 Thus, the indemnity provisions protecting "Company Group" require ETS to indemnify AEP against any and all claims made by ETS's employees (as well as ETS's subcontractors and invitees) but, importantly, not against claims made by all of the various individuals and entities within the larger class of the "Contractor Group."[4] The term "Contractor Group" is used only to specify AEP's duty to indemnify.

¶13 As stated, "Contractor" is defined in the agreement as "ETS Oilfield Services, L.P.," i.e., ETS, and not as the entity identified as the employer of McBride -- "Eagle Testing Services LP" -- in McBride's petition filed in the Texas lawsuit. AEP alleges in its amended petition that Eagle is not merely another name for ETS but is "a subsidiary of ETS." Elsewhere, however, AEP asserts McBride was an employee of ETS at the time of the underlying accident. Neither party has presented evidentiary materials in this regard, nor have they presented any argument or authority in support of the proposition that an employee of a subsidiary (assuming Eagle is a subsidiary of ETS) is an employee of the controlling entity.

¶14 Nevertheless, even assuming for purposes of summary judgment that McBride was an employee of ETS, McBride's claims in the Texas lawsuit are asserted only against C&J, a third-party independent contractor not within the "Company Group."[5] As quoted above, the definition of Company Group, although broad, does not expressly include indemnitees or even contractors of AEP. Although AEP accepted tender of the defense of C&J pursuant to an indemnification provision contained in a contract between AEP and C&J, ETS has only contracted in its agreement with AEP to indemnify the members of the "Company Group."

¶15 AEP is essentially demanding "pass-through" indemnity. "Indemnifying third parties to the contract is called 'pass-through' indemnity."[6] B. Lee Wertz, Jr. & Stephan D. Selinidis, Risk Shifting in the Oil Patch: A Guide to Extraordinary Risk Shifting, 33 Corp. Couns. Rev. 147, 152 (2014). But see 15 O.S. 2011 § 421 ("Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."). AEP asserts "[i]t does not . . . matter whether there is no specific language to 'pass through' indemnity" because "Oklahoma does not require any specific, magic language." According to ETS, the law on "pass-through" indemnity is not well developed in Oklahoma. It is established in Oklahoma, however, that "the terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." Osprey L.L.C. v. Kelly-Moore Paint Co. Inc., 1999 OK 50, ¶ 13, 984 P.2d 194.

As with other contracts, the cardinal rule in the interpretation of an indemnity contract is to "ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles." McAtee v. Wes-Lee Corp., 1977 OK 130, ¶ 6, 566 P.2d 442, 444 (quoting Clifford v. United States Fid. & Guar. Co., 1926 OK 564, ¶ 0, 249 P. 938, 938 (syllabus by the Court)). The intention of the parties should be derived from the whole contract, with particular clauses of a contract being subordinate to the general intent; and every part of a contract should be given effect, "each clause helping to interpret the others." 15 O.S. 2001 [now 2011] §§ 157, 166; Wallace v. Sherwood Const. Co., 1994 OK CIV APP 82, 877 P.2d 632. Although the terms of a contract may be broad, "it extends only to those things concerning which it appears that the parties intended to contract." 15 O.S. 2001 [now 2011] § 164. "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." 15 O.S. 2001 [now 2011] § 163.

Estate of King v. Wagoner Cty. Bd. of Cty. Comm'rs, 2006 OK CIV APP 118, ¶ 14, 146 P.3d 833.

¶16 The parties' agreement does not contain any language expressly stating that ETS agrees its indemnity obligation extends to third-party contractors (or any other third-party outside the Company Group) to whom Company Group (including AEP) owes an indemnification duty, nor does the definition of "Company Group" include AEP's contractors and/or subcontractors. Less clear, however, is whether, given the seemingly all-encompassing nature of the language found in portions of the indemnification provisions in the agreement, ETS has nevertheless agreed to indemnify the Company Group from contractual liability to third parties arising from claims made by ETS's employees, subcontractors and invitees.[7] The agreement states that

Contractor agrees to protect, defend, indemnify and hold harmless Company Group, from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Company Group, any theory of strict liability and defect of premises . . . , arising in connection herewith in favor of Contractor's employees, Contractor's subcontractors or their employees, or Contractor's invitees on account of bodily injury, death or damage to property.

(Emphasis added.)

¶17 While we agree that this language is very broad, we disagree with the trial court that this language "is clear and explicit" with regard to requiring ETS to indemnify AEP from AEP's separately contracted duty to indemnify third-party contractors sued by ETS employees. Indeed, the next provision in the agreement provides, in part, that AEP agrees to indemnify Contractor Group from all claims made by "Company's contractors," and the agreement executed by C&J and AEP contains the same language -- i.e., that AEP agrees to indemnify C&J against all claims made by AEP's contractors. The trial court's reading would render nugatory AEP's promises to indemnify its contractors against claims made by other contractors, and would place the indemnification duty on the contractor whose employee was injured; in effect, such a reading would require the injured employee's employer (here, ETS) to indemnify the negligent employee and its employer (here, C&J), without any clear terms in the agreement to this effect.

¶18 In Oklahoma, it is further established:

Agreements to indemnify a party against its own negligence or liability are strictly construed. See Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1420 (10th Cir. 1990) (applying Oklahoma law). "To be enforceable, the agreement must meet the following three conditions: (1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." Id. (citing Fretwell v. Protection Alarm Co., 1988 OK 84, ¶ 12, 764 P.2d 149, 152).

Noble Steel, Inc. v. Williams Bros. Concrete Const. Co., 2002 OK CIV APP 66, ¶ 10, 49 P.3d 766.

An agreement which would have the effect of indemnifying one against its own negligence is strictly construed. Fretwell[,] ¶ 12. To be enforceable, such an agreement must be "unequivocally clear from an examination of the contract." Id. ¶ 12, 764 P.2d at 153 (emphasis added).

Estate of King, 2006 OK CIV APP 118, ¶ 50. Thus, we conclude Oklahoma law on this point is consistent with the following principles:

[U]nless expressly stated, pass through indemnification clauses violate the long standing policy underlying the rule narrowly construing indemnification provisions. When the provision sought to be "passed through" involves indemnification for acts of another party's negligence, the theory will not be applied, unless the contract language is clear and specific. Sound public policy requires an unequivocally stated intention to be included in the subcontract for this particular type of provision to pass through[.]

Bernotas v. Super Fresh Food Markets, Inc., 863 A.2d 478, 484 (Penn. 2004).[8]

¶19 Although the parties' agreement contains general language susceptible to a broad interpretation, it lacks the "unequivocally clear" language necessary to make ETS responsible for indemnifying AEP from AEP's contractual duty to indemnify C&J. AEP's proposed interpretation of the parties' agreement is perhaps all the more unreasonable in the present case, where AEP entered into its indemnity agreement with C&J (dated September 30, 2014) only after ETS and AEP executed their agreement (dated August 14, 2014). But, regardless, unequivocally clear language which might support AEP's pass-through indemnity theory is lacking in the parties' agreement. Therefore, we conclude the trial court erred in granting summary judgment in favor of AEP. Cf. Noble Steel, ¶ 10 ("It is unnecessary to address the second and third requirements, because [the plaintiff] cannot meet the first requirement."). Summary judgment should, instead, be entered in favor of ETS.

CONCLUSION

¶20 We conclude the trial court erred in granting summary judgment in favor of AEP. Summary judgment should, instead, be entered in favor of ETS. We remand this case to the trial court with instructions to enter summary judgment in favor of ETS.

¶21 REVERSED AND REMANDED WITH INSTRUCTIONS.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] It appears C&J filed for "Chapter 11" bankruptcy relief in July 2016.

[2] McBride further alleges that the rig was "owned and operated by [C&J.]" Elsewhere in the evidentiary materials it is stated that the alleged injuries occurred "at a well-site owned and operated by [AEP]."

[3] The "partial list of those entities which are part of the Company Group" is set forth as follows:

1. [AEP]
2. AEPB Services, LLC
3. American Energy Permian Holdings, LLC
4. American Energy Management Services, LLC
5. American Energy Partners, LP[.]

[4] This reading is bolstered by other provisions of the parties' agreement. For example, one provision states, in full, as follows: "The indemnity provisions of this Agreement shall apply to any and all work performed, services rendered or material supplied by Contractor on behalf of Company whether Company is acting in the capacity of an operator, non-operator or working interest owner." (Emphasis added.)

[5] As stated above, the agreement between C&J and AEP states, like the agreement between ETS and AEP, that C&J "shall be deemed to be an independent Contractor[.]" AEP has made no indemnification claim based, for example, on an assertion of an employer/employee or agency relationship with C&J, an assertion which could potentially be proven despite contract language stating otherwise. See, e.g., Duncan v. Powers Imports, 1994 OK 126, ¶ 8, 884 P.2d 854 ("eleven factors . . . in deciding whether a person is an independent contractor"). We decline to make such an argument for AEP. See, e.g., Enter. Mgmt. Consultants, Inc. v. State ex rel. Okla. Tax Comm'n, 1988 OK 91, ¶ 5, 768 P.2d 359 (An agency relationship will not be presumed, and "[t]he burden of proving the existence, nature and extent of the agency relationship rests ordinarily upon the party who asserts it." (footnote omitted)). Although, when "determining the propriety of granting a summary judgment, the trial court is not only authorized but required to rule out all theories of liability fairly encompassed within the evidentiary material presented," Parris v. Limes, 2012 OK 18, ¶ 3, 277 P.3d 1259 (citation omitted), the only evidentiary material presented in this regard is the contract language stating that C&J is to be deemed an independent contractor.

[6] The terms "flow-down" or "flow-through" indemnity are also sometimes used.

[7] See 33 Corp. Couns. Rev. at 152 ("There are different ways to accomplish pass-through protection. One method is for the indemnitor to agree to indemnify the indemnitee from any contractual liability to third parties," "[a] second method would be to specify that the indemnity obligation is owed to the indemnitee and anyone to whom the indemnitee owes contractual indemnity," and "[a] third method would be to expand the categories of persons or companies entitled to indemnity protection to include the indemnitee and its contractors and subcontractors." (footnotes omitted)).

[8] See Nat'l Union Fire Ins. Co. v. A.A.R.W. Skyways, Inc., 1989 OK 157, ¶ 11, 784 P.2d 52 (Although Nat'l Union Fire was issued prior to Bernotas and involved a different legal issue, the Oklahoma Supreme Court stated: "[W]e cite with approval a sister state opinion [of the Supreme Court of Pennsylvania] that expressly states the law of indemnity as we perceive it.").






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1994 OK CIV APP 82, 877 P.2d 632, 65 OBJ 2351, Wallace v. Sherwood Const. Co., Inc.
Discussed
 2002 OK CIV APP 66, 49 P.3d 766, NOBLE STEEL, INC. v. WILLIAMS BROTHERS CONCRETE CONSTRUCTIONS CO.
Discussed
 2006 OK CIV APP 92, 140 P.3d 563, GEYER BROTHERS EQUIPMENT CO. v. STANDARD RESOURCES, LLC.
Discussed
 2006 OK CIV APP 118, 146 P.3d 833, THE ESTATE OF KING v. WAGONER COUNTY BOARD OF COUNTY COMMISSIONERS
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 84, 764 P.2d 149, 59 OBJ 1890, Fretwell v. Protection Alarm Co.
Discussed
 1988 OK 91, 768 P.2d 359, 59 OBJ 1963, Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Com'n
Discussed
 1989 OK 157, 784 P.2d 52, 60 OBJ 3131, National Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.
Discussed
 1994 OK 126, 884 P.2d 854, 65 OBJ 3839, Duncan v. Powers Imports
Discussed
 2011 OK 18, 250 P.3d 328, PLANO PETROLEUM, LLC v. GHK EXPLORATION, L.P.
Discussed
 2012 OK 18, 277 P.3d 1259, PARRIS v. LIMES
Discussed
 1977 OK 130, 566 P.2d 442, McATEE v. WES-LEE CORP.
Discussed
 1926 OK 564, 249 P. 938, 119 Okla. 133, CLIFFORD v. UNITED STATES F. & G. CO.
Discussed
 1999 OK 50, 984 P.2d 194, 70 OBJ 1809, Osprey L.L.C. v. Kelly-Moore Paint Co.
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 157, Whole of Contract Taken Together
Cited
 15 O.S. 163, Explanation by Reference to the Circumstances
Cited
 15 O.S. 164, Terms of Contract Restricted to Intention of Parties
Cited
 15 O.S. 421, "Indemnity" Defined
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA